CARRINGTON *against* HOLABIRD :

#### IN ERROR.

A bill in equity for a new trial of an action at law, and an injunction against proceedings to enforce the judgment, is within the jurisdiction of a court of chancery ; and the relief sought will be granted, where the judgment recovered is against conscience, and the applicant had no opportunity to make defence, or was prevented by accident, or the fraud or improper management of the adverse party, and without fault on his own part.

In *August* 1841, A brought his action against B and C, on a contract made by them jointly in the city of *New-York*, before the superior court in this state, process being served upon B personally, but not upon C. Neither B nor C appeared at the term of the court to which the suit was brought, nor at any subsequent term, to make answer thereto ; but A appeared, and had the suit

continued to the term of the court in *February* 1842, and thence to the term in *August* 1842, when he recovered a judgment against *B* and *C* by default. On the 4th of *February* 1842, *B* applied to the district court of the *United States* for the *Southern* district of *New-York*, for the benefit of the bankrupt act, and on the 1st of *July* 1842, obtained a decree, discharging him from all his debts due at the time of his application, and a certificate pursuant to such decree. In *October* 1843, *A* took out execution on his judgment against *B* and *C*, and levied it upon the property of *B*, acquired since his discharge in bankruptcy. On an application afterwards made by *B* to the superior court, praying for a new trial in said suit, and for an injunction against further proceedings on said execution, it was held, 1. that by law, judgment should have been rendered in that suit by default, either at the first, or the next succeeding term of the court; 2. that the proceedings in bankruptcy constituted a meritorious defence to the claim of *A*, being neither immoral, nor in any respect inequitable, which *B*, having been thus deprived of, without his fault, ought to have an opportunity to interpose; 3. that for this purpose, the relief sought should be granted. [One judge dissenting.]

If, on the hearing of such application, the court reject testimony which is legally admissible, such decision is the subject of revision by writ of error.

To exclude a witness, on the ground that his testimony, if admitted, will tend to protect him from claims against him, it must first be shown, that there is at least a *prima facie* case of liability against him, and that he is exposed to certain danger from such claims.

The mere fact that an attorney was retained to appear and defend in a certain suit, and that he did not appear and defend therein, without showing that his client had any available defence, or sustained any damage by his negligence, does not show such an interest in him as will render him an incompetent witness for his client in another suit.

THIS was an application to the superior court, by *Edward Carrington* against *William S. Holabird* Esq., for a new trial in certain causes, in which judgments had been rendered against *Carrington*, and for an injunction against further proceedings in the collection or enforcement of the executions issued on such judgments.

The plaintiff's bill stated the following case. *Holabird* instituted three suits against *Carrington & Lee*, a partnership consisting of the present plaintiff and *Frederick A. Lee*, both then residing in the city of *New-York*, on three promissory notes made by them, returnable to the superior court in *Litchfield* county, on the third *Tuesday* of *August* 1841. The writs were duly served on *Carrington* personally; but no service thereof was made upon *Lee*. After being so served, they were returned to said court, entered in the docket thereof, and by continuance came to the term of said court holden at

*Litchfield*, June, 1846.

Carrington *v.* Holabird.

*Litchfield,* on the third *Tuesday* of *August* 1842, when *Holabird* recovered judgment in said suits as follows; in one, for the sum of 123 dollars, 46 cents, damages, and 20 dollars, 80 cents, costs of suit ; in one, for the sum of 127 dollars, 25 cents, damages, and 20 dollars, 88 cents, costs of suit ; and in the other, for the sum of 125 dollars, 39 cents, damages, and 20 dollars, 88 cents, costs of suit. On the 21st of *October* 1843, he took out three executions of that date upon each of said judgments, which executions were delivered to *Albert Sedgwick,* sheriff of the county of *Litchfield,* for service, who levied them upon sundry articles of the personal property of *Carrington,* acquired by him since obtaining his certificate from the district court of the *United States* for the *Southern* district in the state of *New-York,* of the value, in the whole, of about 550 dollars. This property the sheriff posted upon the sign-post in the town of *Colebrook,* (*Carrington's* place of residence,) to be sold on the 7th of *December* 1843. Neither *Carrington* nor *Lee* ever appeared in any way in said suits, which were continued as aforesaid, by *Holabird,* without any order of said court in the premises, and without any reason therefor. Of such continuances neither *Carrington* nor *Lee* had any knowledge whatever, until after said judgments were recovered ; they supposing that said suits had been terminated, and judgment rendered, at· or before the term of said court holden on the third *Tuesday* of *February* 1842.

On the 4th of *February* 1842, *Carrington,* being then a citizen of *New-York,* made application, in due form of law, to the district court of the *United States* for the *Southern* district of the state of *New-York,* for the benefit of the provisions of the act of Congress, entitled " An Act to establish a uniform system of Bankruptcy throughout the *United States ;*" upon which application such proceedings were had, that he was, on the 1st of *March* 1842, by said district court, adjudged and declared a bankrupt; and afterwards, on the 1st of *July* 1842, he was, by a decree of said court, fully discharged from all his debts provable under said act, and owing by him in any way at the time of his application to the court. In pursuance of this decree, the clerk of said court, by order of said court, made a certificate, that said decree had been made, and delivered such certificate to *Carrington.* The debts for which said judgments were recovered, had accrued before, and were

outstanding, when said application was made, when said decree was passed, and when said certificate of discharge was given, and might have been proved, under said act of Congress, against *Carrington's* estate. No property was attached in said suits against *Carrington & Lee;* nor was there any lien upon the property so levied upon, or any part thereof, until such levy was made. By reason of the premises, *Carrington* was by law entitled to be discharged and exonerated from said debts; but being wholly ignorant of the continuance of said suits, he neglected to plead, or in any way avail himself of such discharge, as he would have done, had he known of the pendency and continuance of said suits. *Holabird* threatens and intends to enforce the payment of said judgments against *Carrington,* and will do so, unless prevented by an injunction, and the granting of a new trial; without which, *Carrington* can in no way avail himself of his discharge and certificate. *Holabird* is insolvent, and should he enforce payment of said judgments, or any part thereof, against *Carrington,* the latter has reason to fear and believe, that in case a new trial should be granted, he would be unable to refund the money so recovered by him.

Upon the hearing of the cause before the superior court, at *Litchfield, April* adjourned term, 1845, the court found, that *Holabird* instituted said suits, and recovered said judgments, as specified in the plaintiff's bill; that he caused executions to be issued on said judgments, and to be levied on the property of *Carrington,* as averred in the bill; that all the allegations touching the application of *Carrington* for the benefit of the bankrupt act, and his discharge from all his debts provable under said act, were proved and true; that the debts comprised in said judgments, were provable in bankruptcy, under said act, against the estate of *Carrington;* that *Carrington* retained and employed *Gideon Hall Jr.* Esq., an attorney at law, to appear in his behalf, in each of said causes, and to defend them; that he was not ignorant of said continuances, nor did he suppose said suits had been terminated and judgments had been rendered therein, at or before the third *Tuesday* of *February* 1842; but there was no evidence before the court to show, that he did in fact appear or answer to said suits; and no entry of an appearance, by the defendants, or either of them, appeared upon the docket of the court, at either of the terms

HARVARD LAW LIBRARY

Litchfield,
June, 1846.

Carrington
v.
Holabird.

while said causes were pending.   It also appeared in evidence, and the court found, that it is a common practice in the superior court in *Litchfield* county, for causes to be continued in court from term to term, without any special order made about them, and without any entry made upon the docket against them, in causes where there is, as well as in causes where there is not, an appearance for the defendants.   As to the alleged insolvency of *Holabird*, the finding of the court was silent.

On the hearing of the cause, the defendant having introduced evidence to prove, that *Carrington* retained and employed said *Hall* to appear in each of said suits, and to defend them, the plaintiff offered said *Hall* as a witness to testify, that he never was so retained, employed or authorized, by *Carrington* or *Lee*, to appear in their behalf in said causes, or in either of them.   To this witness the defendant objected, on the ground that inasmuch as he had adduced evidence showing that *Carrington* had retained and employed said *Hall*, as his attorney, to appear in each of said causes, and that said *Hall* had neglected to appear therein, he was interested, and could not be received as a witness, to prove the contrary.   The court sustained the objection, and excluded the witness.

It was thereupon adjudged, that the plaintiff's bill be dismissed, and that he take nothing thereby.   To obtain a revision of this judgment, the plaintiff brought the record before this court, by motion in error.

*Ellsworth* and *Hall*, for the plaintiff in error, contended, 1. That this application was a proper one, and addressed to the proper forum.   It seeks for a new trial, and for an injunction against further proceedings to enforce the judgments ; and it is addressed to the same court that rendered the judgments.

2. That the proceedings complained of, were the subject of revision by writ of error.   The granting of a new trial is deemed a matter of discretion, because there is no standard of decision on that question.   But the court, in rendering a judgment, must proceed according to the rules of law ; and the *mode of proceeding* is always the subject of error.

3. That upon the facts found in this case, the plaintiff was entitled to the relief sought.   In the first place, according to the usual and legal course of proceeding, the former suits, on

*Litchfield,*
June, 1846.

Carrington
*v.*
Holabird.

the default of the party named therein as defendant to appear, would have gone into judgment at the first or second term; and he had a right to presume, that this course had been pursued; in which case, he could successfully avail himself of his discharge in bankruptcy against the judgments. *Graham & al.* v. *Pierson,* 6 *Hill* 247. It does not appear from the finding, that he had *notice* of the continued pendency of the suits. But if he had, he knew that he had not appeared, or authorized any appearance; and that the continuances were therefore illegal. Secondly, the defence in question was one which the party might have conscientiously availed himself of; it was an *equitable* defence. He had surrendered all his property for the benefit of his creditors, and for *this creditor,* among the rest. *Lee* v. *Phillips,* 6 *Hill* 246.

4. That *Hall* was an admissible witness, on the hearing. The ground of his exclusion was, that he had been employed to appear in the suits, and that he had been guilty of negligence so as to render himself liable to his employer. The point to be established by his testimony, and to which alone it was directed, was, that he was *not* so employed. Now, in the first place, is his mouth to be shut on this point, by *assuming* the fact in controversy? But secondly, if this fact were conceded, it would not follow, of course, that *Hall* had made himself liable, by his negligence. He might have been perfectly justifiable, under the then existing circumstances, in not appearing. To exclude a witness on the ground of interest, the interest must be *certain* and *direct:* a contingent or remote interest will not disqualify him. *Falls* & al. v. *Belknap,* 1 *Johns. R.* 487. 491. *Stewart* v. *Kip,* 5 *Johns. R.* 257. 2 *Phil. Ev.* 40. *Carter* v. *Pearce,* 1 *Term R.* 163. *Cutler* & al. v. *Rathbun,* 3 *Hill* 577.

*Church* and *Seymour,* for the defendant in error, contended, 1. That this application, which was a bill in chancery, was made to the wrong forum. The judgments sought to be set aside, were rendered by a *court of law;* and a court of law is competent to grant a new trial, and is the proper tribunal to be resorted to for that purpose.

2. That a writ of error is not sustainable to revise the judgment of the superior court on a petition for a new trial; the granting or refusing of a new trial being matter of discretion.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*

Carrington
*v.*
Holabird.

In the first place, this is true, where the judgment complained of was rendered upon the *merits* of the case. *Kimball* v. *Cady, Kirby* 41. *Granger* v. *Bissell,* 2 *Day* 364. *Lewis* v. *Hawley,* 1 *Conn. R.* 49. *White* v. *Trinity Church,* 5 *Conn. R.* 187. *Magill* v. *Lyman,* 6 *Conn. R.* 59. 69. *Henderson* v. *Moore,* 5 *Cranch* 11. *Blunt's* lessee v. *Smith,* 7 *Wheat.* 248. Secondly, it follows, *a fortiori,* that a decision upon an interlocutory question arising on the hearing, cannot be thus revised.

3. That the testimony of *Hall* was properly excluded; because, in the first place, he was interested in the event of the suit. The judgments in question were rendered against *Carrington,* in consequence of the negligence of *Hall,* his attorney; and the object of the testimony was to aid in getting rid of these judgments. This, if effected, would shield *Hall* from liability to *Carrington. Greenl. Ev. sect.* 394. In a suit against *Hall,* these judgments would be evidence of their being rendered, and of the amount thereby recovered. Secondly, the testimony objected to was immaterial and irrelevant; for if it had been received, and the fact which it was offered to prove, established, it would have made no difference in the result: it would still have been the duty of the court to dismiss the application. Where a party has lost the protection of an unconscionable or unreasonable defence, the court will not grant a new trial to enable him to make such defence. 1 *Sw. Dig.* 788. *Willet* v. *Atherton,* 1 *Bla. R.* 35. *Edmondson* v. *Machell,* 2 *Term R.* 4. *Wilkinson* v. *Payne,* 4 *Term R.* 468. *No facts* are averred in the bill, or found by the court, showing that the testimony of *Hall* would have had any influence upon the decision. *Edwards* v. *Evans,* 3 *East* 351.

CHURCH, J. The character of this application is somewhat equivocal. It is not a petition or bill, addressed in form to a court of equity; and if it had not contained a prayer for an injunction, it might, well enough, have been taken for a petition to a court of law for a new trial, under the 68th section of our statute regulating civil actions. But viewing it aside from its technical and formal parts, we see, that it is a proceeding in equity for an injunction, and a new trial, founded upon the ignorance and mistake of the plaintiff regarding the pendency of several actions at law in favour of this defendant, against

him and his co-partner, growing out of what he claims to have been the improper and unexpected course of the present defendant in bringing those suits to judgment.

Although bills in equity for injunctions against judgments, as well as for new trials of actions at law, are not frequent; yet they are recognized as falling within chancery jurisdiction, and may be sustained in cases of mistake and accident, when no other remedy is adequate. This jurisdiction will be exercised, when to enforce a judgment recovered is against conscience, and where the applicant had no opportunity to make defence, or was prevented by accident, or the fraud or improper management of the opposite party, and without fault on his own part. 2 *Sto. Eq.* 173. *Mitf. Pl.* 131. *Woodworth* v. *Van Buskirk,* 1 *Johns. Ch. R.* 432. *Floyd* v. *Paine,* 6 *Johns. Ch. R.* 479.

The facts charged in the plaintiff's bill, bring his case within this principle. He was, together with his co-partner, sued, by this defendant, by writs returnable to the superior court in this county, at its *August* term, 1841, and which were duly served upon him personally. Neither he nor his co-partner appeared, at that or any subsequent term of the court, to make any answer to the suits. The law and the course of practice, in such case, required, that judgments should have been rendered by default, either at the first, or at farthest, at the next succeeding term of the court. And as the law required this, the present plaintiff, who was a defendant in those actions, could not be supposed either to know or believe, that any other than the usual and legal course would have been taken with them, and that they were still in such a position that he could, at any time, interpose the proceedings in bankruptcy as a defence. Having suffered a default, he was not bound to look after the causes, but must have believed they had passed into judgment before he instituted process in the district court to obtain his discharge. He was, therefore, warranted in alleging in his bill, that he was ignorant of the continuance of the suits, by reason of which alone, he failed to appear and avail himself of the defence then in his power to make. And he was justified in supposing, that his subsequent discharge in bankruptcy had exonerated him from these judgments, as well as from all other debts. The consequence has been, that without fault on the part of the plaintiff, these demands have

HARVARD LAW LIBRARY

*Litchfield,*
June, 1846.
———
Carrington
*v.*
Holabird.

now appeared against him unexpectedly, in the shape of operative executions, by which his subsequently acquired property is threatened to be swept away.

We have no reason to say, that the plaintiff in those actions, resorted to any means to continue them open on the docket of the court, until the discharge was obtained, or that he supposed the then defendants ignorant of their condition ; but the injury resulting to the present plaintiff, by reason of the unwarranted delay in the rendition of the judgments, is not the less real.

The plaintiff demands a new trial. If this were all, he could have had remedy at law ; but a new trial, without an injunction to stay proceedings on the executions in the meanwhile, might be useless, and would be so, if the allegation in this bill of the defendant's insolvency, be true.

If the plaintiff had a meritorious defence against those actions, and, under the circumstances found by the court, has been prevented from making it before, he ought to be permitted to make it on another trial. We think, that the defence proposed is a meritorious one: it is neither immoral, nor in any respect inequitable. It is one which the law of Congress has generously, and, in our opinion, constitutionally, provided, for all debtors in the same situation with this plaintiff, and of which he has an equal right with all other citizens, to avail himself, unless he has forfeited it, by some fault or negligence of his own. *Lee* v. *Philips*, 6 *Hill* 246, 7. This defence has been compared with that arising under the statute of limitations, and which, it has sometimes been said, should not be encouraged, and to admit which, a new trial will not be allowed. Whether even this doctrine, without exceptions, would be approved by us, we do not say. But the distinction between the plea of bankruptcy and the statute of limitations, is wide. One denies the existence of the debt ; the other goes only to the time of the remedy.

If the plaintiff presented to the court below a case, in legal form, which by law he had a right to present, and which the court was bound to hear and decide, he, like all other suitors, was entitled to a hearing according to the established rules of law and usages of courts. And it is no good answer to this suggestion, to say, that applications for new trials, whether at law or in equity, are subject to the discretionary power of the

court, and therefore, that writs of error will not lie from judgments granting or refusing them.

A petition at law for a new trial, is a remedy given by statute, and approved by the common law. An injunction to stay proceedings upon an unjust judgment, and for a new trial, under circumstances like the present, is a remedy recognized and approved in a court of equity. These remedies are to be enforced under the operation of established forms and rules of proceeding, instituted, as they are, for the development of truth and justice. Process must be duly issued and served, as in other cases; pleadings, evidence and judgments are to follow. To be sure, the final decree or judgment to be rendered, more literally than in ordinary cases, may be the result of a reasonable judicial discretion, not of an arbitrary one. But how is such a discretion to be exercised, except under the influence of evidence produced and heard? The facts which are to govern the final discretion of the court, can only be proved by legal evidence—such only as courts of justice recognize as admissible proofs. And if the court is bound to act at all, it must be equally bound to hear all legal testimony, or it cannot safely decide. If, therefore, the superior court erred on the trial of this petition, in rejecting the testimony of *Hall*, which, by the legal rules of evidence, ought to have been received, and thus excluded from its consideration facts essential to the safe exercise of its final discretionary power, it was an error which requires correction, as in other cases.

The present defendant, on the trial below, introduced evidence to prove, that *Gideon Hall* jr. Esq., an attorney, was retained as counsel, by the present plaintiff, to appear and defend in the actions at law; thereby intending to show, that *Carrington*, while defendant in the actions against himself and his co-partner, was not ignorant of the condition of those causes, but consented to their continuance in court, until the judgments now complained of were rendered; and by which evidence, we suppose, the superior court was chiefly induced to dismiss this petition. It was important and controuling evidence for the defendant; and to rebut and deny it, the plaintiff offered *Hall* himself as a witness, to testify that he never was retained, and was never, in fact, the attorney of either of the defendants in the original actions, and knew nothing of the state of those causes. He was objected to, by the defendant,

*Litchfield,*
*June, 1846.*

Carrington
*v.*
Holabird.

on the ground of interest ; and on that ground he was excluded by the court.

In what respect *Hall* was interested, and for what cause disqualified as a witness, the record does not disclose. No fact is shown, by which we can discover any objectionable interest ; nor does it appear, that any such fact was shown to the superior court. It is true, that there was evidence in that court that *Hall* had been retained as counsel to defend in the original actions. And in argument here, we are informed, that *Hall* was liable to be sued, by his clients, for negligence, as an attorney, in the management of those causes, and was therefore interested to relieve himself, by procuring, by his testimony, a new trial, and an injunction against the effect of the judgments. But no facts appear, showing any negligence on his part, or which in any way disclose a liability. It is said, he was employed to defend the actions against his clients ; but no proceedings in bankruptcy were instituted until long after the first term of the court in which those actions were pending, and no defence at that time existed against them ; and if *Hall* had then appeared and claimed a defence, either he or his clients would have been guilty of a fraud upon the court. And it no where appears, that *Hall*, at any time, knew of any bankruptcy process in the district of *New-York*, which could be interposed to prevent judgments against his clients ; or that he had ever been instructed to make any such defence. We discover nothing, therefore, to persuade us, that *Hall* was liable to his clients for negligence or other cause, which should disqualify him as a witness in the cause. It is not enough to create an interest in a witness, that he may be sued in respect of the matter about which he is called to testify, without showing, at least, a *prima facie* case of liability against him. Nor is it enough to exclude a witness, that he is placing himself, by his testimony, in a state of security, without first showing, that he is at least exposed to certain danger. *Carter* v. *Pearce,* 1 *Term R.* 162. *Rosc. Ev.* 85. *Taylor* & al. v. *The United States,* 2 *Howard* 206. *Cox's* admr. v. *Hill,* 3 *Ohio Rep.* 411. 424. *Dudley* v. *Bolles,* 24 *Wend.* 465. 2 *Stark. Ev.* 768.

There is a class of cases which may be referred to as inconsistent with these views, the correctness of which has, however, been considerably doubted, by the very judges, by whom

some of them were decided, and who seem to have yielded in their decisions to precedent, rather than principle : as where it was holden, that the plaintiff's wagoner was an incompetent witness to testify that the defendant had negligently driven his mail-coach against the wagon of the plaintiff, while the witness was driving it ; and cases of like character. *Rotheroe* v. *Elton, Peake's N. P. Ca.* 84. *Miller* v. *Falconer,* 1 *Campb.* 251. *Moorish* v. *Foote,* 8 *Taun.* 454. (4 *E. C. L.* 164.) *Kerrison* v. *Coatsworth,* 1 *Car. & Pa.* 646. (11 *E. C. L.* 510.) *Wake* v. *Locke,* 5 *Car. & Pa.* 454. (24 *E. C. L.* 402.) 1 *Greenl. Ev.* 466. n. 1.

*Litchfield,*
June, 1846.

Carrington
*v.*
Holabird.

These cases must have assumed, and the decisions cannot be justified, except upon the ground, that the alternative was such as that the witness was certainly liable, unless by his testimony he charged another in exoneration of himself. But as we have said, no fact appears in this case imputing to *Hall* negligence, or any delinquency, whereby he could have been liable in damages to his client, or any body else, for the course taken with the actions referred to. There was really nothing more in the objection to his testimony, then, than that he was the attorney of *Carrington,* who called him as a witness.

We are of opinion, therefore, that the decision of the court below, and the rejection of the testimony of *Hall,* were erroneous ; and that the judgment must be reversed.

In this opinion the other Judges concurred, except HINMAN, J., who thought that the plaintiff's bill was insufficient.

Judgment reversed.