## WINGATE *v.* HAYWOOD.

10 437
66 430

All judgments, properly rendered by a court having jurisdiction of the cause and of the parties, are conclusive between the parties and their privies.

The jurisdiction of a superior court of common law is to be presumed unless the contrary appear, and nothing shall be intended to be out of its jurisdiction but that which specially appears to be so.

If, however, the judgment of a common law court of general jurisdiction be rendered by accident or mistake, or through fraud, or any fact exist which proves it to be against conscience to execute the judgment, of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud, accident or mistake, unmixed with any fault or negligence of himself or his agents, a court of equity may interfere, by temporary or perpetual injunction, to restrain the adverse party from availing himself of such a judgment.

Fraud will vitiate any judgment, and a court of equity may declare it a nullity. Equity has so great an abhorrence of fraud that it will set aside its own decrees, if founded thereupon.

IN EQUITY. The plaintiffs sought to have an alleged judgment of the Superior Court of Judicature against them, in favor of the defendant, set aside and vacated, or a perpetual injunction issued against the enforcement thereof, on the ground that the same had been improperly rendered ; that court having no jurisdiction of the action, or not having undertaken to exercise any, or said judgment having been rendered by accident, mistake or fraud, in derogation of the rights of the plaintiffs, and while they had a good defence to the action, which they were prevented from making, without any fault of their own. The principal facts in the case, as disclosed by the bill, answer and evidence, were as follows :

On the 23d of November, 1840, the defendant commenced an action of assumpsit against the plaintiffs, and others, now deceased, in the Court of Common Pleas for the county of Strafford, returnable at Dover on the third Tuesday of January, 1841, founded upon their joint and several promissory note for $2,000, dated August 25, 1835,

payable to Luther D. Sawyer, one of the plaintiffs, or his
order, at the Suffolk Bank, Boston, in three years from
date, with interest annually, and by said Sawyer indorsed
to the defendant, and caused the real estate of the plain-
tiffs to be attached upon the writ.   The action was duly
entered at the term of court to which it was returnable,
and subsequently, by an act of the legislature upon the
division of Strafford county, was transferred to the Court
of Common Pleas for this county, where it was continued
from term to term until February term, 1842, when the
counsel for the parties entered into a written agreement,
setting forth the facts upon which they relied, and pro-
viding for the transfer of the action to the Superior Court
for determination.  At the same time the presiding justice
entered, underneath this agreement, as signed by the
counsel, a memorandum of the exceptions taken by the
plaintiffs to the defendant's right to recover, and ordered
the case thus made to be transferred to the Superior Court,
for such order and decision as said court might direct.
The following is a copy of the memorandum and order of
transfer :

"The defendants except to a recovery in this action, on
the ground that Luther D. Sawyer is both promisor and
promisee of the note, and that the note for this reason is
invalid ; and said case is hereby transferred to the Supe-
rior Court, for such order and decision as said court shall
direct.              N. G. UPHAM, *Presiding Justice.*"

The entry of the action was still continued upon the
docket of the Common Pleas, after this transfer, an entry
of "*case transferred*" having been made under it, from
term to term, until August term, 1843, when it was finally
discharged therefrom by an entry of "Neither Party."

At the July term, 1843, of the Superior Court, the now
plaintiffs, then defendants, moved to have the case dis-
charged from that court, because, since its transfer, they
had all obtained discharges, in the District Court of the

Wingate *v.* Haywood.

United States for the District of New-Hampshire, as voluntary bankrupts, under the provisions of an act of Congress ; and also asked leave to file in that court pleas showing their several discharges in bankruptcy since the last continuance, in bar of the further maintenance of the action against them upon said note.   The Superior Court denied the motion, and refused the request, on the express ground that the legal questions raised by the case were to be decided irrespective of subsequently occurring events, and that the action, not being in that court, but only the case and the legal questions arising upon the same, as transferred, the only proper tribunal before which to file pleas of new matter in discharge of the further maintenance of the suit, was the Court of Common Pleas, in which only the action was pending.   The plaintiffs also asked for a stay of proceedings, which was refused.   The court thereafter decided against the validity of the objection raised to the defendant's right to recover, as set forth in the case transferred, and ordered judgment for the defendant.

Notwithstanding this express decision of the Superior Court, at the July term, 1843, that the action was not there pending, a judgment was afterwards entered up therein, as of that term, in favor of the defendant against the plaintiffs, and others, now deceased, for $958.75 debt or damage, being the balance due on the note declared upon, and costs, taxed at $36.14.   Upon this judgment executions had been issued every two years and oftener, thirteen in all; the first dated July 29, 1843, and the last July 16, 1857 ; on which last the defendant caused the real and personal estate of Luther D. Sawyer, one of the plaintiffs, to be attached, August 12, 1857.   Said Sawyer and others of the plaintiffs had had sufficient visible property on which said judgment might have been satisfied, most or all of the time after the rendition of said judgment, but no attempt was ever made to collect it

until August 12, 1857. No one of the numerous execu-
tions, until the last, appeared ever to have been in the
hands of an officer. No attempt was ever made to levy
upon the real estate attached on the original writ.

On the 20th day of September, 1843, the plaintiffs, by
petition representing the proceedings herein before detailed
in the Common Pleas and Superior Courts, and alleging
that an order had been made in the Superior Court for a
judgment against them in the aforesaid suit in the Court
of Common Pleas, applied to the District Court of New-
Hampshire for an injunction against such anticipated
judgment in the Common Pleas, and an order was made
therefor, but none ever issued. In 1849 the defendant
obtained an order of said District Court for the dissolution
of said injunction.

. There were upon the files of the Superior Court for
this county, pleas of discharges in bankruptcy, obtained
since the last continuance, pleaded by each of the orig-
inal defendants respectively, as of July term, 1843, in bar
of the further maintenance of the action; but no copies
of the writ, note, or other papers, except of the case
reserved and transferred. The docket of that term con-
tained under the entry of the action *Haywood* v. *Wingate*,
the following memorandum: First, in pencil, "*Papers
del'd Mr. Lyford;*" then, in ink, "*Pleas not rec'd;*" then,
in ink, "*Judgment for plff. for amount of note.*" Then
figures, in ink, "958.75," and, underneath these figures,
the figures "36.14."

Other facts were shown in evidence on both sides, but
they sufficiently appear in the opinion of the court.

*L. D. Sawyer, H. A. Bellows* and *Wm. H. Bartlett,* for
the plaintiffs.

*S. C. Lyford, Minot & Mugridge, Joel Parker,* and *Jona-
than Kittredge,* for the defendant.

Wingate *v.* Haywood.

FOWLER, J. The important question in the case before us relates to the validity of the alleged judgment in favor of the defendant against the plaintiffs, in the Superior Court, July term, 1843.

All judgments, properly rendered by a court having jurisdiction of the cause and of the parties, are conclusive between those parties and their privies. *State* v. *Richmond*, 26 N. H. 232.

The jurisdiction of a superior court of common law is to be presumed, unless the contrary appears; and nothing shall be intended to be out of its jurisdiction, but that which specially appears to be so. *State* v. *Richmond*, 26 N. H. 232; *Beaubien* v. *Binkerhoff*, 2 Scam. 269; *Vance* v. *Frink*, 2 Scam. 263; *Hubbard* v. *Harris*, 2 Scam. 279.

If, however, the judgment of a court of common law, having general jurisdiction, be rendered by accident or mistake, or through fraud, or any fact exist which proves it to be against conscience to execute the judgment, of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud, accident or mistake, unmixed with any fault or negligence of himself or his agents, a court of equity may interfere by temporary or perpetual injunction to restrain the adverse party from availing himself of such a judgment. Fraud will vitiate a judgment, and a court of equity may declare it a nullity. Equity has so great an abhorrence of fraud that it will set aside its own decrees if founded thereupon. 13 Vin. Abr. 543, 559; 1 Vern. 277; 2 Story Eq. Jur., sec. 887; *Marine Insurance Co.* v. *Hodgdon*, 7 Cranch 332; *Jarvis* v. *Chandler*, 1 Turn. & Russ. 319; Eden on Inj., ch. 2, p. 44; Mitf. Eq. Pl. by Jeremy, 127–133; *Gainsborough* v. *Gifford*, 2 P. Wms. 424; 2 Story Eq. Jur., secs. 878, 880, 881, and authorities; *Ex'rs of Blake* v. *Lowe*, 2 Dessau. 270; *Reigal* v. *Wood*, 1 Johns. Ch. 402; *McDonald* v. *Neilson*, 2 Cow. 139.

The bill charges that the action in which the judgment sought to be avoided is alleged to have been rendered, was pending in the Court of Common Pleas on the fourth Tuesday of July, A. D. 1843, and was not pending in said Superior Court of Judicature; and that by law no judgment could have been rendered in said action in said Superior Court of Judicature, on which execution could have issued; and that at the next term of the Court of Common Pleas, holden at Gilford, in and for the county of Belknap, on the third Tuesday of August, 1843, such proceedings were had that said action, by the consent and agreement of said parties, was entered "neither party," and discontinued.

By the provisions of the act of December 29, 1832, entitled "An act relating to the organization of courts of justice," in force during the early pendency of the action in which the alleged judgment purports to have been rendered, the Court of Common Pleas had original, exclusive and final jurisdiction of the action, unless the same were transferred to the Superior Court by order of the presiding justice of the Court of Common Pleas, at some term thereof. Laws of November session, 1832, ch. 89.

The seventh section of the act provides in its first clause for the filing of a bill of exceptions "to any opinion, direction or judgment of said court, in any action, matter, process or proceeding of a civil or criminal nature, which, being reduced to writing and conformable to the truth of the case, shall be signed by the presiding justice," who may thereupon *order and direct* "the said action, matter, process or proceeding" to be transferred to the Superior Court of Judicature, to be there entered and proceeded upon; but if not, the exceptions are to form the foundation for a writ of error, which may be brought to reverse "the judgment rendered in said action, matter, process or proceeding." The second clause of the same section provides for the reserving, assigning and referring to the

Superior Court by the presiding justice of the Common Pleas, in like manner, of "any issue of law, motion for a new trial, question arising upon any special verdict, or any other question or matter of law arising at any term thereof," and requires him in such case to transfer to that court "the action, cause, motion, petition or matter in which the same may arise," "to be there entered, proceeded upon and disposed of." The third and last clause of the section is in these words: "And the parties may, in any action or matter, at any time pending in the Courts of Common Pleas, agree upon the facts arising and existing in such case, and the same being reduced to writing, and signed by the parties, or their counsel or agents, such action or matter may, if the presiding judge shall think it proper, be reserved and assigned to the determination of said Superior Court, and be transferred and disposed of as aforesaid."

It is quite apparent, from an examination of these provisions, that no action could in any event be transferred from the Court of Common Pleas to the Superior Court, without the direction or order of the presiding justice of the Common Pleas, at some term thereof, to that effect, and such order of transfer must appear in the record, to give the Superior Court jurisdiction, and render its judgments valid. In terms, there never was any order in the case of *Haywood* v. *Wingate & als.*, that "said action be reserved and assigned to the determination of the Superior Court," "to be there entered, proceeded upon and disposed of." The order was, "and said case is hereby ordered to be transferred to the Superior Court, for such order and decision as said court shall direct." Now, although *case* is sometimes used as meaning "a cause or suit in courts," yet its more ordinary signification, as defined by Webster, is "a *question*—a state of facts involving a question for discussion or decision." And our first impression was that this was the precise sense in which it

had been employed in the order under consideration—especially as in the section of the statute under which alone the action could be transferred from one court to the other, the word case is never used as synonymous with *action* or *cause*, but it is expressly provided that the *action* shall be transferred when such transfer is intended.

An examination of a large number of cases in Merrimack county, arising under the act of December 29, 1832, gave strength to our impression as to the construction of the statute, and of the order in this case. Where both the questions raised, and the action in which they arose were transferred from the Common Pleas, the form of the order by *Parker*, C. J., uniformly was, "that the case be reserved and referred," or "assigned," "to the determination of the Superior Court of Judicature, and that the action be transferred to that court;" by the late Judge Green, "that the case be reserved and action transferred to the Superior Court for their decision therein;" and by Judge Upham, "that the case be reserved and the action transferred to the Superior Court for such order and decision therein as said court shall direct."

A more extended examination of the dockets in the various counties has satisfied us that there was, in fact, much less uniformity in the language used by the judges, in making transfers from the Common Pleas to the Superior Court, than our earlier examinations in Merrimack had led us to believe; and that it was not uncommon, when the practice under the statute had become familiar, that the order was made in the precise form adopted in this case, "that the case be transferred," &c., without any mention of the action. In most cases which were transferred to the Superior Court, it appears that judgments were finally rendered and executions issued there, unless they were remanded back to the Common Pleas for further proceedings, and this seems to have been done without reference to the form of the transfer, as well where the

order was that the case be transferred, as where it was that the action be transferred.

The result of the further examination leads us to the conclusion that the word *case* was generally understood to be used in the sense of *an action* or *cause in court*, whenever it was employed alone in these orders of transfer. We are the more readily induced to adopt this conclusion from the observation that, under the statute of 1832, there is no provision, in express terms, for the transfer of any case or question, merely as a question, but it seems to have been the design of the legislature that the entire action or proceeding should be transferred to the Superior Court, and, in ordinary cases, the final judgment rendered there. Such, we learn from the learned and distinguished gentleman, then chief justice of that court, was the law and practice as then understood.

On the whole, therefore, we think the order in the case under consideration may have been intended to be in conformity to the requirements of the statute, and that it was sufficient to transfer both the question of law raised and the action itself to the Superior Court, and to give to that court jurisdiction to render final judgment in the action.

But, between the term of the Common Pleas at which the order of transfer was made, and the next term of the Superior Court for Belknap county, the Revised Statutes were passed, on the 23d day of December, 1842, and so much of them as applied to the terms of that court took effect on the 1st day of January, 1843, so that the term, which would have been holden in January, 1843, was postponed to July, 1843, and it was not until that term that the case could be entered therein. By the Revised Statutes, ch. 172, secs. 3, 7, 8 [Comp. Laws 437], the practice in relation to transfers was changed. After providing that exceptions should be taken, as under the statute of 1832, it was enacted that " the question arising upon such ex-

ceptions, or upon a special verdict, and any issue of law, motion for a new trial, or statement of facts agreed upon and signed by the parties in any case, may be reserved and assigned by the presiding justice, if he think fit, to the determination of the Superior Court;" and it is then provided that "the decision of the Superior Court, in any of the cases aforesaid, shall be certified by the clerk thereof to the clerk of the Court of Common Pleas in which the action is pending, and such judgment shall be entered or disposition made of the action as is directed therein;" so that, under the operation of these statutes, no action could be transferred from the Common Pleas to the Superior Court, and no judgment could be rendered in the Superior Court in any case transferred thereto under their authority. As these provisions went into effect on the 1st day of January, 1843, the question must at once have arisen, what course should be pursued in the class of cases where, the orders of transfer having been made under the statute of 1832, the terms of the Superior Court, at which they were to be entered and determined, were to be holden under the Revised Statutes?

The repealing chapter of these statutes—ch. 230, sec. 5—contained a provision designed to govern such cases: "The repeal of the acts hereinafter mentioned" [among which was included the act of December 29, 1832] "shall not affect * * any suit or proceeding had or commenced in any civil case before the time when said repeal shall take effect, but the proceedings in every such case shall be conformed, when necessary, to the provisions of the Revised Statutes."

Though the early practice, under the act of 1832, had been to omit, at future terms, from the docket of the Common Pleas, all cases which had been transferred to the Superior Court, yet, for some time before the passage of the Revised Statutes, it had been found convenient to

continue the entries upon the docket of the Common Pleas, with a view to preserve their places in the order of trials when a new trial was ordered. Subsequently to the Revised Statutes the entries of the actions remained in the Common Pleas, and, of course, retained their places on the docket there in their original order.

As the action of *Haywood* v. *Wingate*, under the practice to which we have alluded, had been continued in the Common Pleas, for certain purposes, and as the transfer had not been entered in the Superior Court when the Revised Statutes went into effect, it may well have been a serious question whether the latter court could take jurisdiction of the action to render a final judgment therein, in opposition to the provisions of the Revised Statutes. They certainly could not have done so unless the action was properly and legally pending therein before January 1, 1843, and of this there might be very strong doubts. *Clendennin* v. *Allen*, 4 N. H. 388 ; *Strafford* v. *Bank*, 16 How. 135, 141.

To avoid this difficulty, we are satisfied, from all the evidence and circumstances of the case, the Superior Court determined to conform the proceedings to the provisions of the Revised Statutes, by assuming jurisdiction merely of the question of law raised and transferred, as they had full power to do, and by declining, utterly, jurisdiction of the action, which was at least doubtful, and by ordering judgment, on the agreed case transferred, in the Common Pleas, and not in the Superior Court. As the Superior Court was the ultimate tribunal to determine how the proceedings should be conformed to the requirements of the Revised Statutes, their action, declining jurisdiction of the action, by assuming jurisdiction of the question only, left the action in the Court of Common Pleas by the conclusive adjudication of the court of ultimate resort, and there can be no revision of their determination.

Various facts and circumstances seem to us to render any other conclusion, than that at which we have arrived, morally impossible:

1. The rule and practice of the court both required that certified copies of the writ, pleadings, &c., should·be certified with the case to the Superior Court; but under the Revised Statutes, the case alone was required to be certified. The records show that no other paper was filed in the Superior Court, but the copy of the case alone; and it distinctly appears that the extended judgment set up in this case was made up from no papers, files or minutes in the office of the clerk of the Superior Court, but from the files of the Court of Common Pleas.

2. The form of the entry upon the clerk's docket, "judgment for plff. for amount of the note," confirmed as it is by a corresponding entry on the docket of the judge who delivered the opinion, carries, to our mind, conclusive evidence that the entry was made for the guidance of others. No such entry would probably have been made by the clerk, if judgment had been to be entered there. It would have been, judgment for the plaintiff for $    damages, and $    costs.

3. The decision of the Superior Court in this action, reported in *Haywood* v. *Wingate*, 14 N. H. 273, shows very clearly the view then entertained by the court itself. After referring to the application of the plaintiffs to have the case discharged, and declining to grant it on the ground that the legal questions raised by it were to be decided irrespective of subsequently occurring events, *Woods*, J., in delivering the opinion of the court, says: "The motion to file new pleadings" [discharges of the several defendants in bankruptcy obtained after the transfer of the case from the Common Pleas] "cannot be granted. The rights of the parties must be decided irrespectively of what may have transpired since the case was transferred. There is nothing before us but the questions

Wingate *v.* Haywood.

of law arising upon the case agreed. The action is not brought to this court by the order of transfer, but remains in the Court of Common Pleas for final disposition. The motion made here is only proper to be made in that court."

This opinion, being the well authenticated and authoritative judgment of the court itself, is entirely conclusive that the present was regarded and treated as a case in which the proceedings were to be conformed to the provisions of the Revised Statutes, by the Superior Court assuming jurisdiction of the legal questions alone, and expressly and explicitly declining to take jurisdiction of the action ; thus treating the case in all respects precisely as if the order of transfer had been made under the authority of the Revised Statutes, under which the court itself was acting.

4. In the defendant's answer to the plaintiffs' bill, it is alleged that the signers of the note in question presented their petition, under the oath of Luther D. Sawyer, one of their number, to the District Court of New-Hampshire, on the 20th day of September, 1843, praying an injunction against enforcing the judgment now in controversy, and a copy of the petition is made part of the answer. In this petition the petitioners allege Haywood's suit, and its entry and pendency in the Common Pleas, at the February term, 1842 ; the agreement of the parties to a statement of facts, and the transfer of the case by the presiding judge to the Superior Court. They allege that, after the action was commenced, they obtained discharges in bankruptcy, and, at the July term of the Superior Court in 1843, they filed pleas of said discharges in bar of the action ; that the Superior Court refused to admit and receive those pleas, by reason that said special case had been made ; that the petitioners, in writing, moved the court to set aside the special case and receive said pleas, and to stay proceedings in said action, which the court refused for the same reason ; that the court thereupon

gave their opinion in said case against the petitioners, and directed the clerk of said court to issue an order to the clerk of the Court of Common Pleas, in which court said action was pending, to enter up judgment in the same against the petitioners; and they believe said order was issued, and that such judgment has been or will be so entered up, and they fear that it will be enforced against their persons or property, and pray an injunction against such judgment of the Common Pleas.

A strong effort has been made, by an appeal to the recollection of the learned judge who delivered the opinion in the reported case, to satisfy us that the report of that case is erroneous, and that judgment was in fact ordered to be entered in the Superior Court; but that effort has wholly failed to convince our understandings. We entertain no doubt of the entire candor and sincerity of the statements made to us, but we feel compelled, by all the evidence before us, to believe that the grounds of the decision are truly stated in the published report. The report itself, published when no question had been raised on the subject, and recently after the decision, from minutes made at the time, confirmed and corroborated as it is by the positive and explicit testimony of one of the plaintiffs, himself an attorney and counsellor at law, present and likely, because interested, to remember whatever took place, not only as to the grounds of the opinion stated from the bench by the judge who delivered the opinion, but as to conversation with and statements of the distinguished chief justice upon that occasion, seems to us entitled to far greater weight than the recollections of the judge who delivered it, remaining after the lapse of fifteen years.

So, too, the petition to the District Court was evidently made and sworn to within two months of the sitting of the Superior Court, under the oath of a counsellor at the bar who had been present when the decision was an-

nounced, was one of the parties interested to know and remember what transpired, competent to understand the actual proceedings of the court, and to perceive their bearings; yet it is there expressly stated that the judgment of the Superior Court was an order for judgment in the Common Pleas, and the prayer of the petition was for an injunction against a judgment which had been or it was feared would be rendered in the Court of Common Pleas pursuant to that order, and not for an injunction against a judgment of the Superior Court, and any attempt to enforce that judgment.

This proceeding, which the defendant makes a part of his own answer, seems to us very conclusive evidence of the real history of the case, contemporaneous with the proceedings themselves. If to this we add the reported decision, the entry upon the dockets, the absence of any records upon the files which could legitimately serve as the foundation of any judgment, the deliberate judgment of the court itself, as contained in the printed volume of Reports, that the case was not before them for any purpose but that of deciding the question of law on the case reserved, and the decided, explicit and unequivocal testimony of Luther D. Sawyer, Esq., as to what actually transpired at the time, there remains no room for doubt.

It is likewise deserving of remark that, if the action *Haywood* v. *Wingate & als.* had been regarded by the Superior Court as fully and properly before them, they could not have refused to discharge the case, receive the pleas in bankruptcy, and send the cause back to the Court of Common Pleas for a new trial, consistently with their own established practice in similar cases, as announced in *Alexander* v. *Pierce*, 10 N. H. 494. It was there decided, that the court would not enforce an agreement for the rendition of judgment on a case saved, when it was apparent that the merits of the case had not been tried; but would discharge the case, and order a new trial.

The discharges in bankruptcy were a legal defence to the further maintenance of the suit. *Shaw* v. *Lyford,* 14 N. H. 122 ; *Foster* v. *Hinckley,* 40 Me. 454 ; *Scott* v. *Grant,* 10 Paige Ch. 481 ; *Hollister* v. *Abbot,* 21 N. H. 450 ; *Bank* v. *Onion,* 16 Vt. 470 ; *Carrington* v. *Hollabird,* 17 Conn. 530. It was apparent that the merits of this defence had not been tried. If, therefore, the action had been regarded by the Superior Court as before them for final disposition, they would have been bound by their own established rule in such cases, as well as by every principle of equity and justice, to have discharged the agreed case, and sent the action back to the Common Pleas for trial.

Our conclusion then is, that the Superior Court never rendered any judgment in the action, and that the entry made upon the clerk's docket of a specific sum as damages and another as costs, was wholly unauthorized by any decision or order of the court, and must have been so entered by carelessness, mistake or fraud. The clerk had no authority to enter up such a judgment without a special order of the court ; unless the original writ, if returnable to that court, the note and other papers, or authenticated copies of the writ, pleadings, note and verdict, if any, from the Common Pleas, were properly placed on his files. We think the fact that no extended copy of the record was ever made up and recorded, as it should have been, by the then clerk, evinces a consciousness that something in the state of the case was wrong ; and the further fact that, though some of the judgment debtors are shown to have been constantly able to pay, and no less than twelve writs of execution have been made out by the clerk and placed in his files, they bear no evidence that they were ever out of the office, or ever placed in the hands of any officer for collection, though real estate was attached on the original writ, tends to justify a similar inference.

Though the case furnishes no evidence upon which we can distinctly charge any particular person with fraud in relation to these entries and papers, yet the evidence satisfies us that the entry of the judgment, as it now appears on the minutes of the court, must have been fraudulently made, and that justice requires that the enforcement of this false and fraudulent pretended judgment should be restrained by a perpetual injunction.

*Injunction made perpetual, with costs.*