******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE *v.* CAROL J. ROTHERMEL
## (SC 20463)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 49-15 (a) (1)), "[a]ny judgment foreclosing the title
to real estate by strict foreclosure may, at the discretion of the court
rendering the judgment, upon the written motion of any person having
an interest in the judgment and for cause shown, be opened and modified
. . . provided no such judgment shall be opened after the title has
become absolute in any encumbrancer . . . ."

The plaintiff bank sought to foreclose a mortgage on certain real property
owned by the defendant. The trial court rendered a judgment of strict
foreclosure, and, while negotiating over the next five years, the parties
filed numerous motions to open the judgment, each prior to the passage
of the law day. The court thereafter opened the judgment for a final
time and set the law day for March 12, 2019. Before that date, the
plaintiff's loan servicer, S Co., sent the defendant letters erroneously
stating that a "foreclosure sale" of the property would occur on March
13, 2019. On the evening of March 12, the defendant called S Co. and
was told that the foreclosure sale was scheduled for the following day.
The defendant then contacted a new attorney, who, on March 13, filed
a motion to open the judgment, claiming that the defendant's reliance
on S Co.'s misrepresentations caused her not to file the motion before
the passage of the law day. The trial court denied the defendant's motion,
concluding that it did not have jurisdiction to open the judgment under
§ 49-15 and that the equities of the case did not warrant granting relief.
After the defendant appealed to the Appellate Court, the plaintiff filed
a motion to dismiss the appeal on the ground that the appeal was
moot because the passage of the law day precluded the defendant from
obtaining any practical relief. The Appellate Court dismissed the defen-
dant's appeal, and the defendant, on the granting of certification,
appealed to this court, claiming that the Appellate Court had improperly
dismissed her appeal because § 49-15 did not render her equitable claims
moot and that the trial court had abused its discretion in denying her
motion to open. *Held*:

1. The Appellate Court improperly dismissed the defendant's appeal as moot
   in light of the equitable nature of her claims: although § 49-15 generally
   precludes a judgment of strict foreclosure from being opened after title
   vests absolutely in an encumbrancer, which occurs when the law day
   passes, under the common law of this state, courts may, in rare and
   exceptional cases, exercise a limited form of continuing jurisdiction
   over a motion to open a judgment of strict foreclosure after the passage
   of the law day; in the present case, the defendant's motion to open the
   judgment raised a colorable claim in equity, namely, that her reliance
   on S Co.'s erroneous written and oral misrepresentations justified the
   court's exercise of its inherent, continuing jurisdiction, that claim, if
   meritorious, could have afforded the practical relief sought, and, accord-
   ingly, the defendant's appeal was not moot.

2. The trial court did not abuse its discretion in denying the defendant's
   motion to open the judgment, as equity did not warrant granting the
   relief sought: the trial court's conclusion that the expiration of the
   defendant's right to redemption was caused, at least in part, by her own
   inaction was supported by the court's factual findings that the defendant
   was not confused by S Co.'s letters, that she was represented by an
   attorney who had informed her of the correct law day, that the trial
   court previously had granted numerous motions to open the judgment
   during the parties' negotiations, that the defendant had corrected a
   similar misstatement about the law day made by S Co., and, that even
   if the defendant was confused about the law day, her counsel was not;
   moreover, the defendant did not claim that she lacked the ability or
   resources to unilaterally file her own prevesting motion to open, and

this court's review of the record indicated that the trial court's factual findings, including that the defendant's choice not to affirmatively protect her rights by filing a prevesting motion while negotiating with the plaintiff was dilatory and cavalier, were not clearly erroneous.

Argued December 9, 2020—officially released June 23, 2021*

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant was defaulted for failure to plead; thereafter, the court, *Mintz, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon; subsequently, the court, *Genuario, J.*, denied the defendant's motion to open the judgment, and the defendant appealed to the Appellate Court, which dismissed the appeal, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Christopher G. Brown*, for the appellant (defendant).

*Geraldine A. Cheverko*, for the appellee (plaintiff).

*Jeffrey Gentes* and *J.L. Pottenger*, *Jr.*, filed a brief for the Housing Clinic of the Jerome N. Frank Legal Services Organization as amicus curiae.

*Opinion*

KAHN, J. The principal issue in this appeal is whether General Statutes § 49-15 (a) (1), which provides in relevant part that no judgment of strict foreclosure "shall be opened after the title has become absolute in any encumbrancer," deprives the trial and appellate courts of subject matter jurisdiction over a motion to open a judgment that, although filed after the law days have passed, invokes the trial court's continuing equitable authority. The defendant, Carol J. Rothermel, appeals from the judgment of the Appellate Court dismissing her appeal from the trial court's denial of such a motion. In the present appeal, the defendant argues that (1) the Appellate Court's dismissal was improper because § 49-15 did not render her equitable claims moot, and (2) the trial court abused its discretion by denying her motion to open the judgment. The plaintiff, U.S. Bank National Association,[1] argues in response that the prohibition on postvesting motions to open a judgment set forth in § 49-15 implicates the subject matter jurisdiction of our state courts and that, in any event, the defendant is not entitled to equitable relief on the merits. Although we agree with the defendant that the Appellate Court improperly dismissed her appeal in light of the equitable nature of the particular claims at issue, we conclude that the trial court did not abuse its discretion by denying the underlying motion to open the judgment.

The following facts and procedural history are relevant to our resolution of the present appeal. In 2006, the defendant purchased a parcel of real property improved with a single family home in the town of New Canaan. In order to obtain funds for that transaction, the defendant signed a note promising to pay principal and interest on a loan of one million dollars to the plaintiff's predecessor in interest and then secured that note by mortgaging the property. The defendant defaulted on the note in 2012, and the plaintiff commenced the present action approximately ten months later. Although the defendant initially chose to proceed in a self-represented capacity, she subsequently retained the services of an attorney.

The trial court first rendered a judgment of strict foreclosure on January 13, 2014. Over the next five years, the parties filed a total of seventeen motions to open the judgment prior to the passage of the law day. The court granted fifteen of those motions, each of which was filed by the plaintiff with the defendant's consent.[2] The parties used this additional time to engage in a series of discussions relating to modification of the mortgage, short payoff, and other forms of loss mitigation. After opening its judgment the final time, the trial court set the law day for March 12, 2019.[3]

The equitable claims raised by the defendant stem

primarily from a series of communications between her and the plaintiff's loan servicer, Select Portfolio Servicing, Inc. (servicer), that occurred shortly before the passage of the law day and the expiration of her right to redemption. Specifically, a letter from the servicer to the defendant dated February 20, 2019, erroneously stated that a "previously scheduled foreclosure sale" of the property had been postponed until March 13, 2019,[4] and that the plaintiff was "continuing to evaluate [the defendant's] application for foreclosure prevention assistance." The letter then stated: "Please know that if you have submitted a complete application, we will not proceed with a foreclosure sale. If there is a pending foreclosure sale date, we will instruct our attorney to take appropriate steps to postpone such sale [date] including, where necessary, filing a motion with the court." On March 9, 2019, the defendant received a second letter from the servicer stating: "Your request for workout assistance on the above referenced account has expired. This is either because we did not receive the required payment or because we did not receive the signed agreement. We continue to welcome an opportunity to discuss options to resolve this matter so that possible legal action can be avoided." On that same date, the defendant also received an e-mail from her own attorney informing her that the trial court had set the law day for March 12, 2019.

Three days later, on the evening of the law day itself, the defendant called the servicer and was told once again that the "foreclosure sale" was scheduled for the following day.[5] See footnote 16 of this opinion. Immediately after that call, the defendant contacted a new attorney who filed a motion to open the judgment the next morning, March 13, 2019. That motion claimed that the defendant's reliance on the servicer's misrepresentations had caused her failure to file a motion to open before the passage of the law day. The plaintiff subsequently filed an objection, arguing that, under § 49-15, the trial court was "without jurisdiction to disturb the judgment, but, even if the court did have jurisdiction, it would be inequitable for the court to grant the defendant's motion."

The trial court held an evidentiary hearing on the defendant's motion and requested supplemental briefs from both parties. In a memorandum of decision denying the motion, the trial court concluded that it did not have "jurisdiction or authority" to open the judgment under § 49-15 and that the equities of the case did not warrant granting relief inconsistent with that rule.[6] In reaching this conclusion, the trial court found, as a matter of fact, that the defendant became aware of her law day no later than March 9, 2019, and that she had not been confused by the letters sent by the servicer.[7] The trial court also found that, even if there had been some level of confusion, the defendant had acted in a "dilatory and cavalier" manner by unnecessarily delaying

the filing of her own motion to open the judgment.

The defendant appealed from the trial court's denial of her motion to open the judgment to the Appellate Court. The plaintiff filed a motion to dismiss that appeal, arguing that, under § 49-15, the passage of the law day precluded the defendant from obtaining any practical relief and, as a result, rendered the appeal moot. The defendant filed no objection, and the Appellate Court summarily dismissed the appeal. The defendant's attorney later filed a motion for reconsideration, indicating that electronic service of the plaintiff's motion to dismiss had accidently been routed to the "spam" folder of his e-mail and that, as a result, the motion had escaped his notice until after it had been ruled on. The motion for reconsideration then continued to address the substance of the plaintiff's jurisdictional claim. The Appellate Court ultimately granted that motion for reconsideration but denied the defendant further relief.

This court granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly dismiss as moot the defendant's appeal from the trial court's denial of a motion to open the judgment of strict foreclosure, raising equitable grounds involving alleged misrepresentations by the plaintiff relating to the strict foreclosure proceedings, when the motion to open was filed by the defendant one day after title vested in the plaintiff?" And (2) "If the answer to the first question is 'no,' did the trial court properly deny the defendant's motion to open the judgment of strict foreclosure . . . ?" *U.S. Bank National Assn.* v. *Rothermel*, 335 Conn. 910, 228 A.3d 95 (2020). We address these certified questions in turn.

I

We begin by addressing the defendant's contention that the Appellate Court improperly dismissed her appeal as moot. The defendant, citing *Wells Fargo Bank, N.A.* v. *Melahn*, 148 Conn. App. 1, 85 A.3d 1 (2014), argues that practical relief remained available to her because, notwithstanding the restrictions imposed by § 49-15, courts of this state continue to possess an inherent, equitable authority to open a judgment of strict foreclosure in certain cases after the passage of the law days. For the reasons that follow, we agree with the defendant that the common law of this state does, in fact, support a limited exercise of jurisdiction over a narrow class of equitable claims raised in postvesting motions to open and that, as a result, her appeal was not moot.

We begin by setting forth the standard of review and general principles of law relevant to our discussion of this issue. "Whether an action is moot implicates a court's subject matter jurisdiction and is therefore a question of law over which we exercise plenary review."

(Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 301 Conn. 323, 332, 21 A.3d 737 (2011); accord *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 750, 219 A.3d 744 (2019). Our case law firmly establishes that "[a] case is considered moot if [a] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Mendez*, 320 Conn. 1, 6, 127 A.3d 994 (2015).

"The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature. . . . Because foreclosure is peculiarly an equitable action . . . the court may entertain such questions as are necessary to be determined in order that complete justice may be done. . . . In exercising its equitable discretion, however, the court must comply with mandatory statutory provisions that limit the remedies available . . . . It is our adjudicatory responsibility to find the appropriate accommodation between applicable judicial and statutory principles. Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [so] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256–57, 708 A.2d 1378 (1998).

Our discussion of the jurisdictional issue in the present case, therefore, must be framed by the text of § 49-15 (a) (1), which provides in relevant part: "Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable, *provided no such judgment shall be opened after the title has become absolute in any encumbrancer* . . . ."[8] (Emphasis added.)

In Connecticut, the passage of the law days in an action for strict foreclosure extinguishes a mortgagor's equitable right of redemption and vests absolute title in the encumbrancer. See, e.g., *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 256 n.11. The Appellate Court has previously read § 49-15 (a) (1) in a manner that generally prohibits mortgagors from obtaining practical relief after the passage of the law days and, as a result, has concluded that both postvesting motions to open a judgment and subsequent appeals related to them are moot.[9] See *Real Estate Mortgage Network,*

*Inc.* v. *Squillante*, 184 Conn. App. 356, 360–61, 194 A.3d 1262, cert. denied, 330 Conn. 950, 197 A.3d 390 (2018); *Citigroup Global Markets Realty Corp.* v. *Christiansen*, 163 Conn. App. 635, 640–41, 137 A.3d 76 (2016); *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 324–25, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006); *Provident Bank* v. *Lewitt*, 84 Conn. App. 204, 210–11, 852 A.2d 852, cert. denied, 271 Conn. 924, 859 A.2d 580 (2004); *First National Bank of Chicago* v. *Luecken*, 66 Conn. App. 606, 612, 785 A.2d 1148 (2001), cert. denied, 259 Conn. 915, 792 A.2d 851 (2002); *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 167, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989); *Merry-Go-Round Enterprises, Inc.* v. *Molnar*, 10 Conn. App. 160, 161–62, 521 A.2d 1065 (1987). This court has reached the same conclusion. See *Connecticut National Mortgage Co.* v. *Knudsen*, 323 Conn. 684, 687 n.5, 150 A.3d 675 (2016) ("an appeal from a judgment of strict foreclosure is moot when the law days pass, the rights of redemption are cut off, and title becomes unconditional in the plaintiff" (internal quotation marks omitted)); see also *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 574–75, 953 A.2d 868 (2008).[10]

Both this court and the Appellate Court have, however, also previously recognized that trial courts possess inherent powers that support certain limited forms of continuing equitable authority; see, e.g., *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 433, 881 A.2d 230 (2005); and that these powers can, in certain rare and exceptional cases, be exercised in a manner consistent with § 49-15 after the passage of the law days. This fact is, we believe, clearly demonstrated by both our decision in *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 251, and by the Appellate Court's decision in *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 1. A brief review of those two decisions is instructive.

In *Jajer*, this court concluded "that § 49-15 does not deprive the trial court of jurisdiction to open a judgment of foreclosure [after the passage of the law days] to correct an inadvertent omission in a foreclosure complaint." *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 260. The plaintiff in that case had mistakenly omitted from its complaint one of three parcels subject to the mortgage being foreclosed on. Id., 253. The trial court rendered a judgment of strict foreclosure on that complaint, the defendants failed to exercise their right to redemption, and the law day passed. Id. The plaintiff subsequently discovered its mistake and moved to open the trial court's judgment so that the underlying complaint could be amended to include the third parcel. Id., 253–54. The trial court granted that motion, permitted amendment of the complaint, and then rendered a judgment of strict foreclosure thereon. Id., 254. The defendants then appealed to the Appellate Court, which

reversed the trial court's judgment on the ground that § 49-15 precluded the trial court from exercising jurisdiction over a motion to open after the law days had passed. Id., 254–55. This court reversed that decision. Id., 268. We began our analysis by reviewing the intersection between the statutory provisions governing the foreclosure process and the underlying equitable nature of such proceedings. Id., 256. In particular, we emphasized that courts adjudicating this type of claim generally have the authority to "entertain such questions as are necessary to be determined in order that complete justice may be done." (Internal quotation marks omitted.) Id. We then examined the particular facts giving rise to the mortgagee's motion to open in that case and concluded that, because title to the third parcel had not yet become absolute and the clerical error at issue was undisputed, § 49-15 did not preclude the trial court from opening the judgment of strict foreclosure even though the law day had actually passed with respect to two of the three parcels. Id., 260.

The Appellate Court's decision in *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 1, arose from a markedly different set of facts. The plaintiff in that case had falsely certified that it had complied with the terms of a court order requiring it to provide notice to all nonappearing defendants. Id., 4–5. The trial court denied a postvesting motion seeking to open the judgment and to dismiss the underlying action filed by a defendant, who had previously been defaulted for failure to appear, on the ground that the passage of the law day categorically precluded the relief sought. Id., 3, 5–6. Despite the constraints imposed by § 49-15, the Appellate Court reversed, concluding that the trial court possessed an inherent, continuing, and equitable authority to enforce its previous order. See id., 10, 13; see also id., 10 ("'the trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to . . . cases wherein the parties have agreed to continuing jurisdiction'"), quoting *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). Based on the unique set of facts then before it, the Appellate Court concluded not only that the trial court had jurisdiction to open the underlying judgment, but also that it had abused its discretion by failing to do so. *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 12–13.

*Jajer* and *Melahn* establish that courts may, in rare and exceptional cases, exercise a limited form of continuing jurisdiction over motions to open judgments of strict foreclosure after the passage of the law days, notwithstanding the statutory limitation imposed by § 49-15. The defendant's motion to open the judgment

in the present case was predicated on a claim that she had relied on errors by the servicer. In support of her motion, the defendant made two related arguments. First, she argued that the factual basis for her claim fell within a category that was legally cognizable in equity. See, e.g., *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 285, 449 A.2d 986 (1982) ("[f]raud, accident, mistake, and surprise are recognized grounds for equitable interference" (internal quotation marks omitted)). Second, relying on *Melahn*, she argued that the trial court should exercise its continuing jurisdiction to open the underlying judgment. Once presented with the motion, the trial court held an evidentiary hearing, solicited briefs from the parties, and issued a memorandum of decision addressing the merits of the defendant's equitable claim.[11] Although the trial court concluded that it lacked jurisdiction, it nonetheless went on to consider the equitable claim on the merits.[12] The jurisdictional conclusion reached by both the trial court and the Appellate Court in the present case was, therefore, premised on the conclusion that the defendant's claim in equity lacked colorability. We disagree with that premise because, as stated previously in this opinion, the defendant's motion raised a colorable claim falling within a class generally recognized in equity and sought relief through the court's inherent, continuing jurisdiction as previously established in *Melahn*. Although the claim she presented was not identical to the one raised in *Melahn*,[13] the defendant alleged that the servicer made erroneous written and oral representations that justified the court's exercise of jurisdiction to consider those equitable claims of accident or mistake, which, if meritorious, could have afforded the practical relief sought. See *State* v. *Jerzy G.*, 326 Conn. 206, 221, 162 A.3d 692 (2017) ("[i]t is a settled principle under both federal and Connecticut case law that, if a *favorable decision* necessarily could not afford the practical relief sought, the case is moot" (emphasis added)); *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003) ("[i]n deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination regarding its merits"); see also *Nielsen* v. *State*, 236 Conn. 1, 6, 670 A.2d 1288 (1996). We therefore conclude that the claim raised in the defendant's motion to open was not moot but, rather, was a recognizable claim in equity and that, as a result, the Appellate Court improperly dismissed the defendant's appeal.

## II

Having resolved the jurisdictional issue, we turn to the question of whether the trial court properly denied the defendant's motion to open the judgment on its merits. The defendant's position on the question remains, as it was before the trial court, that the letters she had received from the servicer contained inadvertent errors[14] and that she had relied on those errors to

her detriment. In response, the plaintiff argues that the defendant's claim is distinguishable from those raised in *Melahn* and that, in any event, the trial court correctly concluded that the facts contained within the record do not warrant an award of equitable relief. We agree with the plaintiff.

The relevant standard of review is well established. "Whether proceeding under the common law or a statute, the action of a trial court in granting or refusing an application to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion." (Internal quotation marks omitted.) *Hartford Federal Savings & Loan Assn.* v. *Stage Harbor Corp.*, 181 Conn. 141, 143, 434 A.2d 341 (1980); see also *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 166, 75 A.3d 651 (2013) ("[a] foreclosure action is an equitable proceeding . . . [and] [t]he determination of what equity requires is a matter for the discretion of the trial court" (internal quotation marks omitted)); *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 95, 952 A.2d 1 (2008) ("We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.)). The trial court's findings of fact, by contrast, are subject to the clearly erroneous standard of review. See, e.g., *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006).

In her motion to open the judgment, the defendant argued that the underlying merits of her equitable claim warrant the same relief afforded in *Melahn*. We disagree. As discussed previously in this opinion, the plaintiff in *Melahn* falsely certified compliance with a court order relating to the provision of notice. *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 4–5. The appellant in that case was a defendant who previously had been defaulted for failure to appear and who undisputedly should have received such a notice. Id., 3, 5. The force of the Appellate Court's reasoning in that case rested on the fact that opening the underlying judgment of strict foreclosure and compelling proper notice was the only way to effectively enforce the trial court's order. Id., 7–8. The defendant in the present case not only appeared, but was represented by counsel. There is no indication in the record that the plaintiff falsely certified compliance with a court order or, indeed, that it had actually failed to comply with any such order in the first instance. Thus, we agree with the trial court's conclusion that the facts of *Melahn* are distinguishable.

The factual findings made by the trial court sufficiently foreclose any other form of equitable relief.[15] As

noted previously in this opinion, the trial court found that the defendant had not, in fact, been confused by the letters she had received from the servicer.[16] The fact that the defendant was represented by an attorney who had informed her of the correct law day, the fact that more than one dozen motions to open the judgment had previously been granted by the court and the fact that the defendant expressly testified to correcting the servicer about a similar misstatement made over the telephone on the evening of the law day itself; see footnote 5 of this opinion; provide more than adequate support for this finding.[17] Even if the defendant had been confused about her law day or the impact of its passage on her legal rights, she was represented by an able attorney who most certainly was not.

Although the defendant argues more broadly that the letters, when read in the context of the ongoing negotiations between the parties, contained an implicit promise by the plaintiff to forbear from future action, she does not—and indeed cannot—argue that she lacked the ability or resources to unilaterally file her own prevesting motion to open the judgment pursuant to § 49-15. See *Hoey* v. *Investors' Mortgage & Guaranty Co.*, 118 Conn. 226, 231–32, 171 A. 438 (1934) ("[The] [o]pportunity was open to [the mortgagor] . . . to have the judgment opened and modified for cause shown up to the expiration of the time fixed for redemption, but she failed to avail herself of this remedy. . . . If more favorable terms or a reduction in the judgment debt could have been obtained, loss of the remedy by [a motion to open] is attributable only to the fault of the [mortgagor] in neglecting to resort to it." (Citation omitted.)). On the basis of the record before it, the trial court found that the defendant's choice not to affirmatively protect her own rights while continuing to pursue negotiations with the plaintiff was "dilatory and cavalier . . . ." Having reviewed that same record in its entirety, we conclude that the trial court's factual findings were not clearly erroneous.

Accepting these findings as true, we see no basis to revisit the trial court's conclusion that the expiration of the defendant's right to redemption was caused, at least in part, by her own inaction. See *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 9–10 ("[e]quity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his [or her] counsel, unless the mistake is unmixed with negligence or . . . unconnected with any negligence or inattention on the part of the judgment debtor" (internal quotation marks omitted)). As a result, the defendant's claim that the trial court abused its discretion by denying her postvesting motion to open the judgment must fail.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

affirm the trial court's denial of the defendant's motion to open the judgment on the merits.

In this opinion the other justices concurred.

* June 23, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The full name of the plaintiff is U.S. Bank National Association, as Trustee on Behalf of the Holders of the Adjustable Rate Mortgage Trust 2007-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2007-1.

[2] The defendant filed the remaining two motions to open the judgment. The trial court denied one of those motions but, nonetheless, extended the law day sua sponte. The defendant's other motion was rendered moot because the trial court granted a motion to open the judgment filed by the plaintiff that was pending at the same time.

[3] The complaint does not identify any subsequent encumbrancers.

[4] Before the trial court, the plaintiff's attorney conceded that the present case does not involve a foreclosure by sale and that the law day was March 12, 2019. She argued before the trial court that "when [the letter said] sale, [it meant] vesting day," and that the servicer "just [didn't] speak Connecticut."

[5] The defendant testified that she had responded to this misstatement in the following manner: "I said, you know, wait a second, I said it's today. They said no it's not, it's tomorrow."

[6] At the hearing on the defendant's motion to open the judgment, trial court made the following statement with respect to its own understanding of the intersection between the limitations imposed by § 49-15 and its own continuing equitable jurisdiction: "[In] most circumstances, the court does not have jurisdiction to open the judgment after the law day has passed and title has vested. There is case law to the extent that, under some rare and unique circumstances . . . [t]here is jurisdiction to open the judgment."

[7] Specifically, the trial court stated: "[I]t is difficult . . . to find that a defendant, who has successfully been able to open judgments of strict foreclosure and extend law days up to sixteen times, would be unaware of the difference between a strict foreclosure, and a foreclosure by sale and between a law day and a sale day." Although the defendant is technically correct that the motions to open the judgment actually granted by the trial court in the present case had been filed by the plaintiff, we do not believe that this fact negates the trial court's general observation that the repetitious opening of judgment and setting of law days over a period of five years would have afforded the defendant with some level of familiarity with the process.

[8] General Statutes § 49-15 (a) (2) sets forth the following exception: "Any judgment foreclosing the title to real estate by strict foreclosure may be opened after title has become absolute in any encumbrancer upon agreement of each party to the foreclosure action who filed an appearance in the action and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, provided (A) such judgment may not be opened more than four months after the date such judgment was entered or more than thirty days after title became absolute in any encumbrancer, whichever is later, and (B) the rights and interests of each party, regardless of whether the party filed an appearance in the action, and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, are restored to the status that existed on the date the judgment was entered."

[9] Questions related to a trial court's jurisdiction over a case normally can, and should, be treated as analytically distinct from questions related to appellate jurisdiction. See, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 534 n.22, 911 A.2d 712 (2006). They spring from different sources and, in most contexts, are not coterminous. Generally, the Appellate Court has jurisdiction to review final judgments of the Superior Court; see General Statutes § 51-197a (a); even when the question at issue is whether the trial court properly dismissed the case for lack of jurisdiction. See, e.g., *Harvey* v. *Dept. of Correction*, 337 Conn. 291, 303–304, 253 A.3d 931 (2020) (affirming judgment of Appellate Court, which upheld trial court's dismissal of complaint on ground of sovereign immunity); *Lazar* v. *Ganim*, 334 Conn. 73, 77, 220 A.3d 18 (2019) (affirming trial court's judgment of dismissal for lack of standing). The rule that § 49-15 deprives an appellate tribunal of jurisdiction over *an appeal* in an action for strict foreclosure after the passage of the law day; see, e.g., *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 167, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989); is rooted in concerns related to mootness, rather than the existence of a final judgment. Although the Appellate Court has jurisdiction to review

a trial court's decision that constitutes a final judgment, it may lack jurisdiction to entertain that decision if it determines that the matter is moot under § 49-15.

[10] The exception set forth in § 49-15 (a) (2), which allows a trial court to open a judgment of strict foreclosure with the consent of interested parties; see footnote 8 of this opinion; and certain cases from this court relating to the predecessor of § 49-15; see, e.g., *Ferguson* v. *Sabo*, 115 Conn. 619, 162 A. 844 (1932), cert. denied, 289 U.S. 734, 53 S. Ct. 595, 77 L. Ed. 1482 (1933); have caused some to question whether the statutory limitation on postvesting motions is properly characterized as one implicating subject matter jurisdiction. See *In re Baby Girl B.*, 224 Conn. 263, 292, 618 A.2d 1 (1992) (citing *Ferguson* as case related to personal jurisdiction); see also *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 8 n.8; see also 1 D. Caron & G. Milne, Connecticut Foreclosures (10th Ed. 2020) § 10-1:1.1, pp. 604–607. Because we conclude that the trial court's inherent equitable authority supported the exercise of jurisdiction in this case, we need not address the precise nature of the limitations otherwise imposed by § 49-15.

[11] In light of the underdeveloped nature of appellate case law governing forms of continuing jurisdiction in this particular context, we believe that this approach was reasonable. We caution, however, that the jurisdictional conclusion reached in the present appeal should not be taken as an invitation for parties in strict foreclosure proceedings to repackage motions to open the judgment filed after the passage of the law days in a manner that superficially invokes the inherent powers underlying *Jajer* or *Melahn*. Exceptions to the general rule against postvesting motions to open judgments of strict foreclosure are, in fact, rare and exceptional. A bare assertion that equity requires such relief is insufficient; as in the present case, the party seeking to invoke the trial court's continuing jurisdiction must base their motion to open on particularized factual allegations that could support a claim cognizable in equity. Trial courts may, under existing case law, grant motions to dismiss pursuant to § 49-15 in cases in which a claim raised in a postvesting motion to open fails to present colorable grounds for equitable relief under these limited exceptions, and appellate courts may continue to summarily dismiss appeals taken from those rulings. We note that such a dismissal in the Appellate Court would occur only after the appellant has been given the opportunity to submit a response to an appellee's motion to dismiss or to present argument giving reasons why the case should not be dismissed in response to the court's own motion.

[12] During the hearing on the motion, the trial court explicitly recognized that it possessed an inherent authority to open judgments of strict foreclosure, even after the passage of the law days, if equity so requires. See footnote 6 of this opinion; see also, e.g., *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 169–70 n.12, 75 A.3d 651 (2013).

[13] The claim that the defendant raised was more akin to that made in *Jajer*, as both involved an error or mistake made by the mortgagee or its representative. See *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 253.

[14] We note that, during the hearing on the motion to open the judgment, the defendant's attorney expressly disclaimed any allegation of fraud by either the plaintiff or its servicer.

[15] This conclusion obviates the need for us to generate a comprehensive list of the various circumstances that may, in other cases, permit a trial court to exercise its equitable jurisdiction to open a judgment of strict foreclosure after the passage of the law day. We continue to believe that the expansion of the common law in this area is best developed through the adjudication of colorable claims; see footnote 11 of this opinion; on a case-by-case basis. *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 257.

[16] The defendant also could not have reasonably relied on any of the statements made by the servicer during the telephone calls that she initiated on the evening of the law day itself because her opportunity to file a prevesting motion to open the judgment had already expired when the courthouse closed earlier that day. See *Real Estate Mortgage Network, Inc.* v. *Squillante*, supra, 184 Conn. App. 362; see also Practice Book § 7-17 (documents received by clerk's office after 5 p.m. deemed filed on following business day).

[17] We agree with the defendant that the wording of the letters she received does tend to suggest that the servicer lacked an accurate understanding of the strict foreclosure process in this state; see footnote 4 of this opinion; but the mere presence of those misstatements in the letters does not provide us with a reason to interfere with the trial court's factual finding that *the defendant* had not been confused as a result. See, e.g., *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, supra, 278 Conn. 107 ("a finding of fact is clearly

erroneous when there is *no evidence* in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (internal quotation marks omitted; emphasis added)).

————————————————