******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WELLS FARGO BANK, N.A., TRUSTEE *v.* MICHAEL
JOHN MELAHN ET AL.
(AC 34726)

Gruendel, Bear and Flynn, Js.

*Argued November 12, 2013—officially released February 4, 2014*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Benjamin Gershberg*, with whom, on the brief, was
*Ridgely Whitmore Brown*, for the appellant (named
defendant).

*Opinion*

BEAR, J. The defendant Michael John Melahn[1] appeals[2] from the trial court's judgment denying his motion to open the strict foreclosure action that was instituted against him by the plaintiff, Wells Fargo Bank, N.A., as trustee.[3] We conclude that the court had the jurisdiction and authority to open, and that it should have opened, the judgment of strict foreclosure after the running of the law day in order to effectuate the clear terms of its judgment, with which the plaintiff encumbrancer had failed to comply and then falsely certified that it had complied. Accordingly, given the unusual specific facts and circumstances of this case, including the omissions and falsification by the plaintiff constituting its noncompliance with the strict foreclosure judgment of the court, we reverse the judgment of the trial court denying the defendant's motion to dismiss the strict foreclosure action.

The following facts inform our review of the defendant's claim. On September 9, 2010, the plaintiff filed an action against the defendant to foreclose a mortgage on certain of his real property. The defendant was defaulted for failure to appear on November 2, 2010. The court rendered a judgment of strict foreclosure on November 22, 2010, with a law day of January 11, 2011. As part of its judgment, the court ordered the plaintiff to "send notice to nonappearing individual defendants by regular and certified mail in accordance with the standing orders." Paragraph D of the uniform foreclosure standing orders, form JD-CV-104, provides: "Within 10 days following the entry of judgment of strict foreclosure the plaintiff must send a letter by certified mail, return receipt requested, and by regular mail, to all nonappearing defendant owners of the equity and a copy of the notice must be sent to the clerk's office. The letter must contain the following information: a.) the letter is being sent by order of the Superior Court; b.) the terms of the judgment of strict foreclosure; c.) nonappearing defendant owner(s) of equity risk the loss of the property if they fail to take steps to protect their interest in the property on or before the defendant owners' law day; d.) non-appearing defendant owner(s) should either file an individual appearance or have counsel file an appearance in order to protect their interest in the equity. The plaintiff must file the return receipt with the Court. The Plaintiff Must Not File A Certificate Of Foreclosure On The Land Records Before Proof Of Mailing Has Been Filed With The Court." On November 23, 2010, the court sent notice of the order and judgment to the plaintiff. The plaintiff, however, did not send notice to the defendant until January 7, 2011, four days before his law day, and the certified notice was not delivered to him until January 11, 2011, the actual law day. The notice sent to the then nonappearing defendant also did not contain the important

information required by the standing orders, which the court had mandated in its judgment. Despite this deficiency, the plaintiff nevertheless certified to the court that notice had been mailed "in compliance with Uniform Foreclosure Standing Order JD-CV-79[4] and JD-CV-104 (d), on January 7, 2011, to all counsel and pro se parties of record to this action . . . ."[5] (Emphasis omitted.)

On February 22, 2011, after the defendant secured legal representation, his attorney filed an appearance in the case, and, on March 31, 2011, he filed a motion to dismiss the foreclosure action due to the plaintiff's noncompliance with the court's judgment and the false certification. The plaintiff opposed the motion. On July 14, 2011, the court opened the judgment of strict foreclosure and granted the defendant's motion to dismiss, holding that because the plaintiff had "failed to comply with the notice requirement of the standing orders, the matter is dismissed as to [the defendant]. . . ." On August 24, 2011, the plaintiff filed a motion to reargue, citing the case of *Falls Mill of Vernon Condominium Assn.*, *Inc.* v. *Sudsbury*, 128 Conn. App. 314, 320–21, 15 A.3d 1210 (2011).[6] The defendant objected to the plaintiff's motion and argued that the dismissal was a proper sanction for the plaintiff's failure to adhere to the order contained in the court's judgment and that it filed a false certification. The court granted the plaintiff's motion and concluded that, despite the plaintiff's failure to adhere to the notice requirements contained in the judgment of strict foreclosure, the court was precluded from opening the judgment and dismissing the action because the law day had passed and title had become absolute in the plaintiff. The court therefore vacated its order granting the defendant's motion to dismiss and then denied the defendant's motion. This appeal followed.

On appeal, the defendant claims that the court improperly "grant[ed] reargument and vacat[ed] the dismissal" of the foreclosure action against the defendant because "the plaintiff's initial noncompliance with the trial court's judgment of strict foreclosure [requiring it] to send notice to the nonappearing defendant in accordance with the uniform foreclosure standing orders, JD-CV-104 . . . [and the] plaintiff's . . . misrepresenting [its] compliance with the standing order, constitute[d] the sort of fraud . . . and flagrant noncompliance with the specific order of the trial court as to vitiate the strict foreclosure judgment post law day." The defendant also argues that the standing orders were adopted by the judges of the Superior Court to ensure that nonappearing defendants receive "constitutional and due process protection . . . ." Given the specific facts and circumstances of this case, including the omissions and falsification by the plaintiff constituting its noncompliance with the strict foreclosure judgment of the court, we conclude that the court had the jurisdic-

tion and authority to open the judgment of strict foreclosure in order to effectuate the clear terms of its judgment, including that the plaintiff comply with the uniform foreclosure standing orders, with which the plaintiff had failed to comply despite certifying otherwise.[7]

"The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature. . . . Because foreclosure is peculiarly an equitable action . . . the court may entertain such questions as are necessary to be determined in order that complete justice may be done. . . . In exercising its equitable discretion, however, the court must comply with mandatory statutory provisions that limit the remedies available to a foreclosing mortgagee. . . . It is our adjudicatory responsibility to find the appropriate accommodation between applicable judicial and statutory principles. Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [so] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256–57, 708 A.2d 1378 (1998).

We are mindful that Practice Book § 63-1 (b) provides that the "failure to give notice of judgment to a nonappearing party shall not affect the running of the appeal period," that General Statutes § 49-15 provides that no judgment of strict foreclosure "shall be opened after the title has become absolute in any encumbrancer," and that "the limitation period of § 49-15 is definitely jurisdictional." D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 9.01A, p. 197. Nevertheless, as our Supreme Court explained in *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002): "We reject [a] hypertechnical understanding of the trial court's continuing jurisdiction to effectuate prior judgments. We conclude, instead, that the trial court's continuing jurisdiction is not separate from, but, rather, *derives* from, its equitable authority to vindicate judgments. Moreover, we hold that such equitable authority . . . [derives] from its inherent powers. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. [555, 563, 468 A.2d 1230 (1983)] (recognizing 'trial court's power to fashion a remedy appropriate to the vindication of a prior consent judgment'); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737, 444 A.2d 196 (1982) (recognizing 'the inherent power of the court to coerce compliance with its orders')." (Emphasis in original; footnote omitted.) See also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 213,

884 A.2d 981 (2005) (explaining and applying reasoning of *AvalonBay Communities, Inc.*). In the present case, where the judgment of the court contained the specific notice requirements to which the plaintiff was ordered to adhere, the court necessarily retained the jurisdiction and authority to effectuate its judgment when the plaintiff failed to adhere to the terms of the judgment rendered in its favor and then falsely certified to the court that it had complied.[8]

"Courts of equity may grant relief from the operation of a judgment when to enforce it is against conscience, and where the appellant had no opportunity to make defense, or was prevented from so doing by accident, or the fraud or improper management of the opposite party, and without fault on his own part. *Folwell* v. *Howell*, 117 Conn. 565, 169 A. 199 [1933]; *Dante* v. *Dante*, 93 Conn. 160, 105 A. 353 [1919]; *Jarvis* v. *Martin*, 77 Conn. 19, 58 A. 15 [1904]; *Smith* v. *Hall*, 71 Conn. 427, 42 A. 86 [1899]; *Carrington* v. *Holabird*, 17 Conn. 530, 537 [1846], 19 Conn. 83, 87 [1848]; General Statutes § 5701 [now § 52-270]."[9] *Hoey* v. *Investors' Mortgage & Guaranty Co.*, 118 Conn. 226, 230, 171 A. 438 (1934). "Fraud, accident, mistake, and surprise are recognized grounds for equitable interference, when one, without his [or her] own negligence, has lost an opportunity to present a meritorious defense to an action, and the enforcement of the judgment so obtained against him [or her] would be against equity and good conscience, and there is no adequate remedy at law. *Lithuanian Brotherhelp Society* v. *Tunila*, 80 Conn. 642, 645, 70 A. 25 (1908). Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his [or her] counsel, unless the mistake is unmixed with negligence or . . . unconnected with any negligence or inattention on the part of the judgment debtor . . . . *Jarvis* v. *Martin*, [supra, 21]; see *Hartford Federal Savings & Loan Assn.* v. *Stage Harbor Corporation*, 181 Conn. 141, 434 A.2d 341 (1980)." (Internal quotation marks omitted.) *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 285, 449 A.2d 986 (1982); see also *Hoey* v. *Investors' Mortgage & Guaranty Co.*, supra, 230–31.

Furthermore, we repeatedly have held that "a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 260 Conn. 243, citing *Nelson* v. *Nelson*, 13 Conn. App. 355, 367, 536 A.2d 985 (1988) and *Clement* v. *Clement*, 34 Conn. App. 641, 647, 643 A.2d 874 (1994). In *AvalonBay Communities, Inc.*, our Supreme Court concluded that "the trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpre-

ted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 246. The court also addressed the argument of the defendant, who had contended that the court's jurisdiction in the cases of *Clement* and *Nelson* had derived from statutory authority, explaining: "*Clement* involved a dispute over a property assignment following a marital dissolution and that General Statutes § 46b-86 specifically provides that the trial court does *not* have continuing jurisdiction to set aside, alter or modify property assignments. See General Statutes § 46b-86 (a) (providing in relevant part that that statute's provision that order for payment of alimony or support may at any time be continued, set aside, altered or modified by court 'shall not apply to [property] assignments under section 46b-81'). We also reject the defendant's claim that General Statutes § 46b-87 provides for the court's continuing jurisdiction over cases involving family matters. That statute merely recognizes the court's common-law contempt power and provides that the court may award attorney's fees to either party in contempt proceedings related to orders issued under the specified statutes. Moreover, nothing in either *Nelson* or *Clement* suggests that the trial court's continuing jurisdiction in those cases derived from the special nature of marital dissolution cases. Rather, the Appellate Court in *Clement* specifically stated that, pursuant to [General Statutes] § 52-212a, the trial court '[had] no jurisdiction to open a judgment and affect the property assignment except within four months after the original judgment'; *Clement* v. *Clement*, supra, 644–45; but that 'it [was] within the equitable powers of the trial court' to effectuate its prior judgment at any time . . . . Id., 646. Accordingly, the Appellate Court in *Clement* could have concluded only that the trial court's continuing jurisdiction over that matter derived from its equitable authority to vindicate judgments." (Emphasis in original.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 243–44; see also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 211–13.

Recently, our Supreme Court again reiterated that " '[e]quity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is unmixed with negligence, or . . . unconnected with any negligence or inattention on the part of the judgment debtor, or . . . when the negligence of the party is not one of the producing causes.' . . . *Jarvis* v. *Martin*, supra, [77 Conn.] 21." *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 174 n.16, 75 A.3d 651 (2013). The court then explained: "Granting relief to [an injured party] in the present case, however, would not consti-

tute a departure from this long established principle. Instead, we are of the view that the circumstances of the present case, which the trial court aptly described as 'sui generis,' constitute precisely the sort of 'rare and extreme [case]'; *Jarvis* v. *Martin*, supra, 21; in which equity permits a court to provide relief in response to an egregious mistake. See *Lomas & Nettleton Co.* v. *Isacs*, 101 Conn. 614, 620–21, 127 A. 6 (1924) (observing that this court has 'upheld the power of a court of equity to grant relief from the consequences of an innocent mistake, although the mistake was not unmixed with negligence . . . and although it was a mistake of law . . . [when] the failure to do so would allow one to enrich himself unjustly at the expense of another' . . .). This is particularly true in the present case given the 'highly relevant' conduct of the plaintiff's counsel in creating these extraordinary circumstances and given the ease with which this predicament might have been averted if the plaintiff's counsel had addressed the court with greater accuracy." *Citibank* v. *Lindland*, supra, 174 n.16.

In the present case, we conclude that this is one of those rare and exceptional circumstances discussed in the foregoing cases. Here, the plaintiff encumbrancer itself failed to comply with the court's judgment of strict foreclosure, and then falsely certified to the court that it had complied, to the detriment of the then nonappearing defendant owner of the property.[10] Under such limited circumstances, we conclude that the court had the jurisdiction and authority to open the judgment of strict foreclosure, despite the passing of the law day, and that it abused its discretion when it declined to do so and denied the defendant's motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] Also named as defendants in the foreclosure action were Danbury Radiological Associates, P.C., and Danbury Hospital. They, however, are not parties to this appeal. We therefore refer in this opinion to Melahn as the defendant.

[2] This appeal was filed jointly with the appeal of the defendant's wife, Kathleen Melahn, in a summary process action that the plaintiff had brought against her. The propriety of the joint filing of these appeals and the issues related to Kathleen Melahn's appeal need not be discussed nor decided because the trial court dismissed the summary process action after the filing of the present appeal. Accordingly, the appeal as it relates to Kathleen Melahn is moot.

The defendant also raises an issue regarding his filing of a motion for a temporary injunction and a writ of audita querela. Because we conclude that the court should have opened the judgment of strict foreclosure to effectuate the terms of that judgment, we need not consider this issue.

[3] The plaintiff has not filed either an appearance or a brief in this appeal.

[4] Form JD-CV-79 contains the standing order in a foreclosure by sale action.

[5] It is unclear from the record whether the trial court clerk sent notice of the judgment of strict foreclosure to the defendant. The order states in relevant part: "via mail to plaintiff—[plaintiff] to send notice per standing orders . . . ." The court's "Notice of Judgment of Strict Foreclosure" then provides that "Copies sent Tuesday, November 23, 2010 to: MARTHA CROOG LLC [plaintiff's counsel]." There is no indication that the court also sent

notice to the defendant.

[6] We conclude that *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, supra, 128 Conn. App. 320–21, is distinguishable from the present case in several respects, including that there was no allegation that the plaintiff in that case had failed to comply with the terms of the court's judgment or that it had falsely certified compliance, the case did not concern a nonappearing defendant owner, and there was no allegation that the defendant had not received actual notice.

[7] We make no determination on the appropriateness of a dismissal as a sanction for the plaintiff's failure to comply with the court's judgment and its improper certification. The appropriate sanction, if any, is discretionary and may be reconsidered by the court on remand.

[8] It is likely that the jurisdictional element presented by the passing of the law day and the vesting of title in a strict foreclosure judgment concerns personal jurisdiction rather than subject matter jurisdiction. See D. Caron & G. Milne, supra, pp. 197–98; see also *In re Baby Girl B.*, 224 Conn. 263, 292, 618 A.2d 1 (1992), citing, inter alia, the strict foreclosure case of *Ferguson* v. *Sabo*, 115 Conn. 619, 623, 162 A. 844 (1932), for the proposition that "[o]ur cases have recognized that a party may waive its objection to a trial court's erroneous exercise of personal jurisdiction . . . ." "Although the limitation period of § 49-15 is definitely jurisdictional, it may still be waived under certain circumstances." D. Caron & G. Milne, supra, p. 197. This is demonstrated in the case of *Ferguson* v. *Sabo*, supra, 619. In *Ferguson*, the plaintiff obtained a judgment of strict foreclosure, and, following the passing of the law days and the vesting of title, the defendant owner filed a motion to open the judgment, which was granted by the trial court. Id., 620–21. The defendant then filed an answer to the foreclosure complaint and brought a counterclaim against the plaintiff, which the plaintiff answered. Id., 621. The matter was tried to the court, and, following a judgment in favor of the defendant on the counterclaim, the plaintiff filed a motion to open and vacate the judgment, claiming it was null and void because the court did not have jurisdiction to open the judgment in the first place because title had vested in the plaintiff. Id. The Supreme Court disagreed and held that the plaintiff had waived any claim of jurisdictional defect by proceeding with the case. Id., 623.

[9] General Statutes § 52-270 provides in relevant part: "(a) The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action. . . ."

[10] Given the circumstances of the plaintiff's noncompliance with a clear order and judgment of the court and its false certification to the court, we decline to examine the record for proof of any actual harm to the defendant.