******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
*v.* LINDA BOOKER ET AL.
(AC 45473)

Bright, C. J., and Suarez and Seeley, Js.

*Syllabus*

W Co., the plaintiff's predecessor in interest, sought to foreclose a mortgage on certain real property owned by the defendants. The defendants had executed a promissory note in the original principal amount of $231,920, which was secured by the mortgage. Thereafter, the defendants signed a loan modification agreement that they had negotiated with O Co., a loan servicing company, the terms of which, inter alia, increased the outstanding principal amount of the debt to $400,706.05. O Co. did not sign the loan modification agreement. After the defendants defaulted on the note and mortgage due to the nonpayment of monthly installments of principal and interest, W Co. declared the entire balance of the note due and payable and sought strict foreclosure of the mortgaged property. Thereafter, W Co. assigned the mortgage to the plaintiff, and the trial court granted W Co.'s motion to substitute the plaintiff as a party to the action. The trial court granted the plaintiff's motion for summary judgment as to liability and rendered a judgment of strict foreclosure. The trial court denied the defendants' motion for reconsideration. The defendants filed a motion to open and vacate the judgment, asserting, for the first time, that there was a discrepancy between the debt amount alleged in the complaint and that found in the strict foreclosure judgment. Two days later, the defendants filed their first appeal, claiming that the trial court erred in denying their motion for reconsideration. Approximately one week later, pursuant to the applicable statute (§ 49-15), title to the mortgaged property vested in the plaintiff. This court dismissed the appeal as moot, and our Supreme Court denied the defendants' petition for certification to appeal. Thereafter, the defendants filed a memorandum of law in support of their motion to open and vacate the judgment, claiming that the trial court made a fundamental mistake in relying on the principal debt amount listed in the plaintiff's affidavit of debt, namely, $400,706.05, rather than on the $231,920 amount alleged in the complaint. The trial court denied the defendants' motion, and the defendants appealed to this court. *Held*:

1. Contrary to the plaintiff's claim, this court did not lack subject matter jurisdiction over the defendants' appeal:

a. Although title to the mortgaged property had vested in the plaintiff following the passage of the law day in accordance with § 49-15, because the defendants claimed that the trial court made a fundamental mistake in relying on an incorrect principal amount of the debt when rendering its judgment of strict foreclosure, and because the defendants' claims of mistake and fraud presented the trial court with colorable grounds for equitable relief pursuant to *U.S. Bank National Assn.* v. *Rothermel* (339 Conn. 366), the defendants' appeal was not moot; accordingly, this court could exercise its limited, continuing jurisdiction, consistent with § 49-15, to provide the defendants with practical relief in the event that it concluded that the trial court improperly declined to exercise its jurisdiction and afford the defendants relief.

b. The defendants did not abandon their claim regarding the principal debt amount by failing to raise it in their initial appeal to this court: the defendants' motion to open was not denied until after their initial appeal had been dismissed, and, as a result, the defendants could not have waived their right to raise the claim of error in the present appeal when the trial court had not ruled on the issue until after the initial appeal had been dismissed.

2. The trial court did not abuse its discretion in denying the defendants' motion to open on the merits because the facts alleged did not present the type of rare and exceptional circumstance required pursuant to *Rothermel* for the court to exercise a limited form of continuing jurisdiction after title to the mortgaged property had vested in the plaintiff:

a. The trial court reasonably could have concluded that, even if a mistake

had occurred, it did not rise to the level of the rare and exceptional circumstance that would require a court in equity to provide relief, as the plaintiff expressly relied on the $400,706.05 principal debt amount in both of its motions for summary judgment, the defendants opposed both motions yet, in doing so, failed to raise the issue regarding the amount of the debt, and a copy of the loan modification agreement that had been signed by the defendants was before the trial court; moreover, the trial court reasonably could have determined that the defendants had ample opportunities throughout the lifespan of the case to raise the issue of the modified debt amount and that their decision to delay doing so until after title to the real property had vested in the plaintiff undermined their argument that the alleged mistake warranted equitable relief. b. The defendants' bare assertion of fraud by the plaintiff did not satisfy the clear and satisfactory evidence standard, and it fell short of the rare and exceptional circumstance justifying continuing jurisdiction under *Rothermel* because the defendants did not present any persuasive evidence that the plaintiff intentionally pleaded a greater debt amount than was actually owed so that its mortgage servicer could earn an increased fee; moreover, the plaintiff's assertion that the loan modification agreement modified the loan did not prove that it was aware that the modified principal amount of the debt was inaccurate, throughout the entirety of the action the plaintiff consistently alleged that the principal debt amount was $400,706.05, and it reasonably could be inferred that the plaintiff acted under the belief that the loan modification agreement was effective because it was signed by the defendants.

Argued April 10—officially released August 1, 2023

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Spader, J.*, granted the motion filed by the plaintiff Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2015-1 to substitute U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust as the plaintiff; thereafter, the court, *Cordani, J.*, granted the plaintiff's motion for summary judgment as to liability against the named defendant et al. and rendered a judgment of strict foreclosure; subsequently, the court, *Baio, J.*, denied the motion for reconsideration filed by the named defendant et al. and the named defendant et al. appealed to this court, which dismissed the appeal as moot; thereafter, our Supreme Court denied the petition for certification to appeal filed by the named defendant et al.; subsequently, the court, *Cirello, J.*, denied the motion to open the judgment filed by the named defendant et al., from which the named defendant et al. appealed to this court. *Affirmed.*

*Thomas P. Willcutts*, for the appellants (named defendant et al.).

*William Dziedzic*, with whom, on the brief, was *Adam L. Avallone*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. In this residential mortgage foreclosure action, the defendants Linda Booker and Ulish Booker, Jr., appeal from the trial court's denial of their motion to open the judgment of strict foreclosure rendered in favor of the plaintiff U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust.[1] The defendants claim that the court erred in denying their motion to open the judgment because the court improperly decided not to exercise its discretion and afford them relief in connection with the grounds of mistake and fraud raised therein.[2] The plaintiff argues that this court should dismiss the appeal because (1) the defendants' appeal is moot, as title in the mortgaged property has vested in the plaintiff, and (2) the defendants should not be allowed to raise their claim of error because it could have been raised in the defendants' prior appeal in this action. The plaintiff also argues that the court did not abuse its discretion in denying the motion to open. We reject the plaintiff's jurisdictional and reviewability arguments and conclude that the court properly denied the defendants' motion to open. Accordingly, we affirm the judgment of the court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On April 25, 2017, the original plaintiff, Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2015-1 (Wilmington Trust), filed a complaint against the defendants, alleging the following facts: On March 30, 2006, the defendants were indebted to New Century Mortgage Corporation (New Century) in connection with a promissory note executed in favor of New Century in the amount of $231,920. The note was secured by a mortgage, executed by the defendants, on their property located in West Haven. Seven years later, the defendants negotiated with Ocwen Loan Servicing, LLC (Ocwen),[3] for a loan modification and signed an agreement dated December 9, 2013, the terms of which increased the principal debt balance to $400,706.05 and reduced the interest rate to 6 percent (2013 loan modification agreement). Ocwen did not sign the 2013 loan modification agreement.

Following a series of assignments, Wilmington Trust became the assignee of the mortgage and, therefore, was entitled to collect the debt evidenced by the note and was entitled to enforce the mortgage. As of April 1, 2014, the defendants were in default on the note and mortgage because of nonpayment of the monthly installments of principal and interest. Wilmington Trust thereafter exercised its option to declare the entire balance of the note due and payable and sought strict foreclosure of the defendants' mortgaged property.

The record reflects the following additional procedural history. On June 29, 2017, Wilmington Trust

assigned the mortgage to the plaintiff and, on January 11, 2018, moved to substitute it as the plaintiff in this action. On January 26, 2018, Wilmington Trust moved for a judgment of strict foreclosure of the defendants' mortgaged property. On January 29, 2018, the court, *Spader, J.*, granted Wilmington Trust's motion to substitute the plaintiff as the party plaintiff. On May 9, 2018, the plaintiff moved for summary judgment as to liability, and the court, *Hon. Anthony V. Avallone*, judge trial referee, denied the motion without prejudice due to a discrepancy with the assignments of the mortgage as set forth in the plaintiff's complaint.[4] On September 28, 2018, the plaintiff filed a subsequent motion for summary judgment as to liability. On January 7, 2019, the court, *Cordani, J.*, granted the September 28, 2018 motion for summary judgment. On January 25, 2019, the defendants, in a self-represented capacity, filed a motion to reargue the September 28, 2018 motion for summary judgment. On February 4, 2019, the court, *Cordani, J.*, denied the defendants' motion to reargue and rendered a judgment of strict foreclosure for the plaintiff, setting the law day for April 22, 2019. On April 22, 2019, the defendants filed a motion to open the judgment and extend the law day. On April 22, 2019, the court, *Cordani, J.*, denied their motion and reset the law day to May 20, 2019.

On May 14, 2019, Ulish Booker, Jr., filed a bankruptcy petition pursuant to chapter 13 of the United States Bankruptcy Code, which resulted in an automatic stay of the law day. On April 2, 2020, the United States Bankruptcy Court for the District of Connecticut dismissed his bankruptcy case. On November 6, 2020, the plaintiff filed a motion to reenter the strict foreclosure judgment and set a new law day. On January 25, 2021, the court, *Baio, J.*, held a hearing and granted the plaintiff's motion, setting the law day for March 22, 2021.[5] On February 16, 2021, the defendants filed a motion for reconsideration of the granting of strict foreclosure, arguing that they did not receive proper notice of the January 25, 2021 hearing and that the plaintiff lacked standing due to the discrepancy with the assignments of the mortgage as set forth in the complaint.[6] On March 11, 2021, the court, *Baio, J.*, denied the defendants' motion for reconsideration. On March 16, 2021, the defendants filed a motion pursuant to Practice Book § 10-33 to open and vacate the judgment of strict foreclosure on the ground that the court lacked subject matter jurisdiction due to the discrepancy with the assignments of the mortgage. In their March 16, 2021 motion to open the judgment, for the first time in this action, the defendants also argued that the debt amount found in the strict foreclosure judgment was different than the amount alleged in the complaint. On March 18, 2021, the defendants filed their first appeal in this action (first appeal), claiming that the court erred in denying their February 16, 2021 motion for reconsidera-

tion. On March 24, 2021, title in the property vested in the plaintiff. On April 9, 2021, the defendants, who had been self-represented until this time, retained counsel.

On May 4, 2021, this court, in the first appeal, ordered the parties, sua sponte, to file memoranda of law as to why the defendants' appeal should not be dismissed as moot because the law day had passed and title had vested in the plaintiff. On May 26, 2021, after reviewing the memoranda of law submitted by the parties, this court dismissed the defendants' appeal as moot. On August 17, 2021, the defendants petitioned our Supreme Court for certification to appeal, which was denied on October 26, 2021.

On February 25, 2022, the defendants, through counsel, filed a memorandum of law in support of their March 16, 2021 motion to open the judgment. Therein, the defendants claimed that the court made a fundamental mistake by relying on an incorrect principal debt amount, taken from the plaintiff's affidavit of debt, when rendering its judgment of strict foreclosure. Specifically, the defendants alleged that the court erred by using the principal debt amount of $400,706.05, in accordance with the proposed 2013 loan modification agreement, instead of the original principal debt amount of $231,920, as alleged in the complaint. The defendants argued that the court has equitable jurisdiction to correct a fundamental mistake under our Supreme Court's decision in *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 373, 260 A.3d 1187 (2021). On March 14, 2022, the plaintiff filed an objection to the defendants' March 16, 2021 motion to open, arguing that the defendants' claim of error did not warrant the exercise of the court's equitable jurisdiction to open the judgment.

On April 14, 2022, the trial court, *Cirello, J.*, held a hearing on the defendants' March 16, 2021 motion to open the judgment and denied the motion.[7] In its order of April 14, 2022, denying the motion, the court stated that, "[a]fter reviewing the court file, the written and oral arguments and all the relevant exhibits, the court finds that there are no legal or equitable reasons to reopen the judgment. . . . To allow the defendants a second bite at the apple to raise claims made in this motion to open is not equitable to all parties concerned." This appeal followed.

On May 13, 2022, the plaintiff filed a motion to dismiss this appeal, arguing that this court lacks subject matter jurisdiction over the appeal because (1) the appeal is moot, as title has vested in the plaintiff, and (2) the claims raised in the appeal could have been raised in the defendants' first appeal. On June 29, 2022, this court denied the plaintiff's motion to dismiss without prejudice to the parties addressing the jurisdictional issue raised by the plaintiff in their appellate briefs. Additional facts and procedural history will be set forth as necessary.

I

As a preliminary matter, we address the arguments raised by the plaintiff that it characterizes as implicating this court's subject matter jurisdiction. First, the plaintiff argues that this court lacks subject matter jurisdiction because title has vested in the plaintiff, and, therefore, the appeal is moot, as this court cannot provide any practical relief to the defendants. Second, the plaintiff argues that the defendants' claim could have been raised in a prior appeal and, thus, has been abandoned. We are not persuaded.

A

"A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction. . . . It is well established that the subject matter jurisdiction of the Appellate Court . . . is governed by [General Statutes] § 52-263, which provides that an aggrieved party may appeal to the court having jurisdiction from the final judgment of the court. . . . [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . If it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Trumbull* v. *Palmer*, 123 Conn. App. 244, 249–50, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010), and cert. denied, 299 Conn. 907, 10 A.3d 526 (2010).

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *Brookstone Homes, LLC* v. *Merco Holdings, LLC*, 208 Conn. App. 789, 798–99, 266 A.3d 921 (2021).

Motions to open judgments of strict foreclosure are

governed by General Statutes § 49-15 (a) (1). Under § 49-15 (a) (1), courts *generally* cannot open a judgment of strict foreclosure after the passage of the law days because such an event vests absolute title in the encumbrancer. See *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 375. Both our Supreme Court and this court, however, have established that courts may, in rare and exceptional cases, exercise a limited form of continuing jurisdiction over motions to open strict foreclosure judgments after the passage of the law days, notwithstanding the statutory limitation imposed by § 49-15. Id., 376–77. Our Supreme Court has indicated that rare and exceptional cases may include circumstances involving "[f]raud, accident, mistake, and surprise . . . ." (Internal quotation marks omitted.) Id., 379. In *Rothermel*, our Supreme Court stated that "[t]rial courts may, under existing case law, grant motions to dismiss pursuant to § 49-15 in cases in which a claim raised in a postvesting motion to open fails to present *colorable grounds* for equitable relief under these limited exceptions, and appellate courts may continue to summarily dismiss appeals taken from those rulings." (Emphasis added.) Id., 379–80 n.11. This court has defined a colorable claim as "one that is superficially well founded but that may ultimately be deemed invalid . . . ." *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 158–59, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004).

In the present case, the defendants claim, in their March 16, 2021 motion to open, that the court made a fundamental mistake by using the incorrect principal amount when rendering its judgment of strict foreclosure. Specifically, the defendants argued that the court mistakenly relied on the plaintiff's affidavit of debt, which stated that the debt was $400,706.05 in accordance with the proposed 2013 loan modification agreement, instead of on the complaint, which alleged that the original principal debt amount was $231,920. The defendants assert that the correct principal debt amount is $231,920 because the 2013 loan modification agreement never became effective, as there is no evidence in the record that the conditions precedent in the agreement have been met, Ocwen is not a party to the present action, and Ocwen did not sign the agreement.[8] The defendants further argued that the plaintiff fraudulently represented to the court in its affidavit of debt an incorrect principal debt amount because the plaintiff's mortgage servicer could potentially earn its fee as a fixed percentage of the outstanding principal balance, providing an incentive for the plaintiff to intentionally inflate the principal debt amount.

The defendants' claims of mistake and fraud presented the trial court with colorable grounds for equitable relief under *Rothermel*, and, accordingly, we may exercise our limited form of continuing jurisdiction to provide the defendants practical relief in the event that

we conclude, as the defendants claim, that the trial court improperly declined to exercise its discretion and afford them relief in connection with their claims of mistake and fraud embodied in their motion to open. Thus, the defendants' appeal is not moot.

B

The plaintiff next claims that this court lacks subject matter jurisdiction because the defendants could have raised the issue regarding the principal debt amount used in the judgment of strict foreclosure in their prior appeal. The plaintiff relies on *Connecticut Savings Bank* v. *Heghmann*, 193 Conn. 157, 159–60, 474 A.2d 790, cert. denied, 469 U.S. 883, 105 S. Ct. 252, 83 L. Ed. 2d 189 (1984), for the notion that once an issue has been abandoned on appeal, it is waived and may not be resurrected. As a preliminary matter, we disagree with the plaintiff insofar as it characterizes this claim as being jurisdictional in nature. The issue of whether the defendants have waived their claim of error by failing to raise it in their first appeal involves important jurisprudential principles as to when it is appropriate for us to review a claim that has not been properly preserved, but in no way implicates this court's jurisdiction to resolve the appeal. Addressing the argument as one that is properly related to reviewability, we are not persuaded that we should decline to review this claim.

"It is well established that when a party brings a subsequent appeal, it cannot raise questions which were or could have been answered in its former appeals. . . . Failure to raise an issue in an initial appeal to this court constitutes a waiver of the right to bring the claim." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Evans*, 159 Conn. App. 343, 356, 123 A.3d 69 (2015). This court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 445, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). This principle applies, however, only when "the issue that a party seeks to raise in a subsequent appeal was one that the party actually litigated *prior to the initial appeal* such that the issue *could have been raised in the initial appeal*." (Emphasis in original; internal quotation marks omitted.) *Disciplinary Counsel* v. *Evans*, supra, 356.

With these principles in mind, we conclude that the plaintiff's reliance on *Heghmann* is misplaced. In *Heghmann*, the defendants appealed to our Supreme Court from a judgment of foreclosure by sale. *Connecticut Savings Bank* v. *Heghmann*, supra, 193 Conn. 158. After our Supreme Court dismissed the appeal, the trial court opened the judgment for the purpose of setting a new sale date. Id. Subsequently, the defendants moved to open the judgment, which motion was denied by the trial court. Id. The defendants brought a subsequent

appeal from the denial of their motion to open, in which they attempted to challenge the rulings that led to the original judgment of foreclosure by sale. Id., 158–59. In affirming the judgment of the trial court in the subsequent appeal, our Supreme Court, on the basis of a review of the preliminary statement of issues in the prior appeal, concluded that "the arguments now being advanced by the defendants could have been asserted in that appeal which was dismissed. . . . [T]he defendants are obliquely attempting to revive an appeal that has succumbed by being abandoned." (Footnote omitted.) Id., 159–60.

In the present case, the defendants first asserted the discrepancy with the principal debt amount in the foreclosure judgment on March 16, 2021, when they filed their motion to open the judgment. This occurred two days prior to the filing of their initial appeal.[9] However, the defendants' March 16, 2021 motion to open was not denied until April 14, 2022, after the prior appeal was dismissed on May 26, 2021. It would strain logic for this court to conclude that the defendants, in connection with the prior appeal, somehow waived their right to raise the current claim of error in the present appeal, related to the ruling of April 14, 2022, when the trial court did not rule on the issue raised in the claim until after the prior appeal was dismissed. Therefore, we conclude that the defendants did not waive the claim that the court erred in denying their March 16, 2021 motion to open.

## II

We now turn to the defendants' claim that the court improperly denied their motion to open the judgment on its merits. We are not persuaded.

In their memorandum in support of their March 16, 2021 motion to open, the defendants asserted that, notwithstanding the fact that title had vested in the plaintiff in accordance with § 49-15 due to the passage of the law day, under the unique circumstances of this case, the court should exercise continuing jurisdiction pursuant to *Rothermel* to afford them relief. In its April 14, 2022 order, the court rejected the defendants' arguments and concluded that there were no legal or equitable grounds on which to open the judgment. On appeal, the defendants argue that the court erred in denying their motion to open and vacate the strict foreclosure judgment by improperly deciding not to exercise its limited equitable discretion and afford them relief in connection with their claims of mistake and fraud. The plaintiff contends that the court did not abuse its discretion by denying the defendants' March 16, 2021 motion to open and vacate the judgment because the facts alleged do not show that this case presents the type of rare and exceptional circumstance described in *Rothermel*. We agree with the plaintiff.

"The relevant standard of review is well established. Whether proceeding under the common law or a statute, the action of a trial court in granting or refusing an application to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion."[10] (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 381. When considering whether the court has abused its discretion, "we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 811–12, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005). The court's factual findings, however, are subject to the clearly erroneous standard of review. See *U.S. Bank National Assn.* v. *Rothermel*, supra, 382. "The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature." (Internal quotation marks omitted.) Id., 374.

As previously discussed in part I A of this opinion, § 49-15 (a) (1) governs the court's authority to open a judgment of strict foreclosure. It provides: "Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable, *provided no such judgment shall be opened after the title has become absolute in any encumbrancer* except as provided in subdivision (2) of this subsection." (Emphasis added.) General Statutes § 49-15 (a) (1).

"In Connecticut, the passage of the law days in an action for strict foreclosure extinguishes a mortgagor's equitable right of redemption and vests absolute title in the encumbrancer." *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 375. We previously have read § 49-15 (a) (1) "in a manner that generally prohibits mortgagors from obtaining practical relief after the passage of the law days and, as a result, ha[ve] concluded that both postvesting motions to open a judgment and subsequent appeals related to them are moot." Id. Nevertheless, our Supreme Court and this court have recognized that the trial court possesses inherent powers to provide limited forms of continuing equitable relief after the passage of the law days in "rare and exceptional" cases, consistent with § 49-15. Id., 376–77.

The limited exception allowing courts to open a judgment of strict foreclosure after title has vested in an encumbrancer originated in *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 257, 708 A.2d 1378 (1998). In *Jajer*, the plaintiff brought an action for foreclosure of a mortgage and mistakenly omitted from its complaint one of the three parcels of land included in the mortgage conveyance. Id., 253. After the trial court rendered a judgment of strict foreclosure on that complaint, the law days had passed, and title for the two included parcels of land vested in the plaintiff, the plaintiff discovered its mistake and moved to open the court's judgment to amend its complaint to include the third parcel of land. Id., 253–54. Our Supreme Court concluded that § 49-15 did not deprive the court of jurisdiction to open the judgment of foreclosure due to the plaintiff's clerical error. Id., 260. The court stated that, "consistently with its authority to exercise its equitable discretion in foreclosure proceedings, the trial court must be afforded the authority to open judgments on a case-by-case basis 'in order that complete justice may be done.' " Id., 261.

Likewise, in *Wells Fargo Bank*, *N.A.* v. *Melahn*, 148 Conn. App. 1, 12–13, 85 A.3d 1 (2014), this court held that the trial court, in rare and exceptional circumstances, has equitable discretion in a foreclosure proceeding to open a judgment after the passage of the law days. Specifically, this court held that an attorney's false certification to the court that the plaintiff had complied with the court's judgment by notifying all nonappearing defendant owners of the equity, constituted a rare and exceptional circumstance allowing the court to open the judgment of strict foreclosure despite the passing of the law day. Id., 3–5. This court explained, "[E]quity permits a court to provide relief in response to an *egregious mistake*." (Emphasis added; internal quotation marks omitted.) Id., 12.

In *Rothermel*, our Supreme Court further clarified that, pursuant to *Jajer* and *Melahn*, the court should consider using its equitable authority to open a judgment after the passage of law days only when the claim raises a colorable ground for equitable relief. *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 379–80 and n.11. In that case, the defendant obtained the funds needed to purchase a parcel of real property by signing a note promising to pay the principal and interest on a loan that was secured by a mortgage on the property. Id., 369. The defendant defaulted on the note and the plaintiff moved for strict foreclosure of the mortgaged property. Id. The trial court granted the plaintiff's motion and rendered a judgment of strict foreclosure. Id. After granting fifteen of the plaintiff's motions to open the judgment, which were filed with the defendant's consent, the trial court set the law day for March 12, 2019. Id., 369–70. On March 13, 2019, the defendant

filed another motion to open the judgment, one day after the law day had passed. Id., 371. The defendant claimed that she had relied on both written and oral misrepresentations by the plaintiff's loan servicer, causing her to file the motion to open the strict foreclosure judgment after the passage of the law day. Id., 370–71. Specifically, the defendant alleged that the loan servicer told her that the "foreclosure sale" was scheduled for March 13, 2019. Id. The trial court denied the defendant's motion to open the judgment, stating that "it did not have 'jurisdiction or authority' to open the judgment under § 49-15" after the passage of the law day. Id., 371. The trial court also denied the defendant's motion on its merits, stating that she became aware of the law day on March 9, 2019, and that she had acted in a " 'dilatory and cavalier' manner by unnecessarily delaying the filing of her own motion to open the judgment." Id., 371–72. The defendant appealed, and this court dismissed her appeal as moot. Id., 372.

Our Supreme Court granted certification and reversed this court's judgment dismissing the appeal. Id., 372, 385. The court reasoned that the defendant "raised a colorable claim falling within a class generally recognized in equity and sought relief through the court's inherent, continuing jurisdiction as previously established in *Melahn*"; id., 380; but ultimately determined that the trial court did not abuse its discretion in concluding that the circumstances did not warrant an award of equitable relief because the late filing of the motion was, in part, due to the defendant's own inaction. Id., 384–85. Our Supreme Court cautioned, however, that "the jurisdictional conclusion reached in the present appeal should not be taken as an invitation for parties in strict foreclosure proceedings to repackage motions to open the judgment filed after the passage of the law days in a manner that superficially invokes the inherent powers underlying *Jajer* or *Melahn*. Exceptions to the general rule against postvesting motions to open judgments of strict foreclosure are, in fact, rare and exceptional. A bare assertion that equity requires such relief is insufficient; as in the present case, the party seeking to invoke the trial court's continuing jurisdiction must base their motion to open on particularized factual allegations that could support a claim cognizable in equity." Id., 379 n.11. As we stated in part I A of this opinion, our Supreme Court has provided some guidance as to what exceptional cases may justify the trial court exercising its continuing equitable authority after the passage of the law days, noting that "[f]raud, accident, mistake, and surprise are recognized grounds for equitable interference." (Internal quotation marks omitted.) Id., 379.

In the present case, the defendants, in their motion to open, raised a colorable claim that fell within the ambit of *Rothermel* by arguing that the court should exercise its equitable, continuing jurisdiction on the

basis of mistake and fraud. The court did not dismiss the motion to open on the grounds that it lacked subject matter jurisdiction or that it was unable to exercise its discretion to grant the defendants relief, if warranted. Instead, it considered the merits of the motion after holding a hearing, at which the parties were afforded an opportunity to address the matter. After the hearing, the court denied the motion on its merits.

As stated previously in this opinion, the court, in its order denying the motion to open, stated in broad terms that no legal or equitable grounds existed to grant the defendants' motion and that "[t]o allow the defendants a second bite at the apple to raise claims made in this motion to open is not equitable to all parties concerned." Insofar as the defendants alleged that a mistake had occurred, the court reasonably could have concluded that this case does not rise to the level of a rare and exceptional circumstance that would require a court in equity to provide relief, considering the statutory limitations set forth in § 49-15. In *Melahn*, this court stated that "[e]quity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is unmixed with negligence, or . . . unconnected with any negligence or inattention on the part of the judgment debtor . . . ." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 11. In the present case, the plaintiff stated in its complaint that "[t]he unpaid balance due pursuant to the terms of said note is $400,706.05" plus interest, late charges and collection costs. Moreover, the plaintiff expressly relied on the modified debt amount in both of its motions for summary judgment. The defendants, however, opposed the motions and failed to raise the issue regarding the amount of the debt owed. Additionally, we note that, before the court was a copy of the 2013 loan modification agreement, signed by the defendants. See footnote 8 of this opinion. The existence of this agreement undermines the defendants' assertion that a mistake had been made. Moreover, the court, in its discretion, reasonably may have determined that, for the defendants to now raise the issue of the modified debt amount at the eleventh hour, after title has vested in the plaintiff, undermines their argument that the alleged mistake warrants equitable relief. The defendants have had ample opportunities throughout the five year lifespan of this case to raise the issue of the modified debt amount mentioned in paragraph five of the complaint and consistently throughout the pleadings. From these considerations, it follows that the court was disinclined to provide the defendants with the proverbial "second bite at the apple."

The defendants also argue that the plaintiff's reliance on the modified principal debt amount in its affidavit of debt amounted to intentional fraud because the plain-

tiff, in its objection to the defendants' motion to open, implicitly admitted that it was aware of the disconnect between the original and modified principal debt amounts when the plaintiff asserted that the defendants should have realized that the debt figure was based on the 2013 loan modification agreement. We are not persuaded.

This court has defined fraud as "deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 780–81, 829 A.2d 422 (2003).

In the present case, the defendants do not draw our attention to any persuasive evidence in the record to support a finding that the plaintiff knew about the discrepancy between the original and modified principal debt amounts, let alone to evidence that the plaintiff intentionally pleaded the higher amount so that its mortgage servicer could earn a higher fee on the outstanding principal balance. A bare assertion of fraud is not the equivalent of clear and satisfactory evidence.

What the plaintiff stated in its objection to the defendants' motion to open does not reasonably support an inference that the plaintiff had knowledge of the inaccuracy of the modified principal debt amount. The plaintiff explicitly stated: "In the instant matter, the defendants fail to offer even a scintilla of evidence to prove that they were misinformed about the terms, or the amount of the loan. The subject loan was modified by way of [the 2013] [l]oan [m]odification [a]greement dated December 9, 2013, and signed by the defendants." The plaintiff's assertion does not prove the fact, by clear and satisfactory evidence, that it was aware that the modified principal debt amount was inaccurate. To the contrary, the plaintiff's assertion supports its position that it believed the 2013 loan modification agreement was effective and accurately reflected the debt owed by the defendants. Throughout the entirety of this action, the plaintiff has consistently alleged that the principal debt owed by the defendants was $400,706.05. Furthermore, it reasonably can be inferred that the plaintiff acted under the belief that the 2013 loan modification agreement was effective because the defendants

had signed it. Therefore, the defendants' bare assertion of intentional fraud by the plaintiff falls woefully short of a rare and exceptional circumstance required by *Rothermel*.

Accordingly, we conclude that the court did not abuse its discretion in denying the defendants' March 16, 2021 motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The underlying action was commenced by Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2015-1 (Wilmington Trust). Thereafter, the court granted Wilmington Trust's motion to substitute U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust as the plaintiff. Accordingly, in this opinion, we will refer to U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust as the plaintiff. Moreover, in this opinion, the term defendants refers only to Linda Booker and Ulish Booker, Jr. New Century Mortgage Corporation, although named as a defendant in the original summons and complaint, did not appear in the underlying proceeding and is not participating in this appeal.

[2] We note that the defendants briefed this argument as two separate claims. The first being that "[t]he defendants' claim of error involves such a fundamental mistake as to warrant the court exercising continuing equitable jurisdiction, notwithstanding the time limitations of [General Statutes §] 49-15" and the second being that "[t]he trial court erred in failing to open and vacate its judgment following the plaintiff's postjudgment admission that the court had entered judgment on a mortgage note that was neither [pleaded] nor produced to the court." Because these two claims are closely related, we will address both of them together in part II of this opinion as part of our discussion regarding whether the court erred in denying the defendants' motion to open the judgment.

[3] Ocwen is a third-party loan servicing company. Although Ocwen negotiated a loan modification agreement with the defendants, it is not a party to this action and is not participating in this appeal. In footnote 8 of this opinion, we set forth the specific terms of the agreement.

[4] The discrepancy with the assignments in the complaint involved the order of the dates in the mortgage assignment between Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee of ARLP Trust 2 and Wilmington Trust, the original plaintiff. Although the plaintiff never amended the complaint to resolve the discrepancy, the defendants have not raised an appellate claim related to this issue and, thus, have abandoned any claim related thereto. See *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005).

[5] The court also determined that the debt owed by the defendants was $641,635.30 and the fair market value of the property was $258,000.

[6] As we stated previously in this opinion, the alleged discrepancy, discussed in footnote 4 of this opinion, led to the denial of the plaintiff's May 9, 2018 motion for summary judgment.

[7] We note that the record does not contain the transcript of the April 14, 2022 hearing. Pursuant to Practice Book § 63-4 (a) (2), the defendants filed a statement with this court that no transcript is necessary. This court frequently has declined to review claims on appeal because the appellant has failed to provide an adequate record for review. See, e.g., *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 712, 850 A.2d 1118 (2004). In the present case, we will review the defendants' claim, as there exists a sufficient basis for appellate review based on the parties' pleadings, the defendants' memorandum of law, and the court's April 14, 2022 order. See id. Although a transcript of the hearing on the motion would have aided and been relevant to our understanding of the legal arguments raised in the trial court proceedings, neither party has suggested that the hearing was evidentiary in nature nor does the trial court record include exhibits from the hearing. The defendants attached several documents, marked as "exhibits," to their memorandum of law. It appears from the record presented to this court that the court relied on those documents in its consideration of the defendants' motion to open. Furthermore, it is not necessary that we review the transcript of the hearing to ascertain the nature of the arguments raised therein, as

there does not appear to be any dispute with respect to the legal grounds on which the defendants relied in bringing their motion to open the judgment.

[8] The terms of the 2013 loan modification agreement are in relevant part as follows: "In order for the terms of this modification to become effective, you promise to make an initial down payment . . . of $3,510.55 on or before 1/1/2014 and two (2) equal monthly payments of principal and interest in the amount of $2,732.14 to Ocwen ('Trial Period') beginning on 2/1/2014, and thereafter due on [the] same day of each succeeding month. . . . You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $400,706.05." The defendants signed the 2013 loan modification agreement, but Ocwen did not.

[9] Although the 2013 loan modification agreement was attached as an exhibit to the defendants' February 16, 2021 motion for reconsideration, the issue of the discrepancy between the principal debt amounts was not distinctly raised until they filed their March 16, 2021 motion to open.

[10] The defendants argue that the standard of review should be plenary, as their claim involves the court's interpretation of the pleadings. A foreclosure action is an equitable proceeding, however, and the determination of what equity requires is a matter of discretion for the court. See *McCord* v. *Fredette*, 92 Conn. App. 131, 132–33, 883 A.2d 1258 (2005). We therefore review the trial court's decision in granting or refusing an application to open a judgment under an abuse of discretion standard. *U.S. Bank National Assn.* v. *Rothermel*, supra, 339 Conn. 381.